63 N.J. Super. 270 (1960)
164 A.2d 496
CHARLES B. GUERNSEY, PLAINTIFF-RESPONDENT,
v.
ALEXANDER ALLAN, COUNTY CLERK OF THE COUNTY OF BERGEN, CHARLES A. BEARCE, BOROUGH CLERK OF THE BOROUGH OF WALDWICK, AND MARY ELLEN BARRETT, FRANK J. KEANE, NICHOLAS HELMIS, ANDREW A. CHURCHSON, AND WALTER E. NALLIN, MEMBERS OF THE CHARTER COMMISSION OF THE BOROUGH OF WALDWICK, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1960.
Decided October 19, 1960.
*272 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. William Miller argued the cause for defendants-appellants.
Mr. Octavius A. Orbe argued the cause for plaintiff-respondent (Messrs. Orbe and Nugent, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
This is an appeal from a summary judgment entered on October 5, 1960 in the Superior Court, Law Division, in favor of the plaintiff, in a proceeding in *273 lieu of prerogative writ. The judgment amended a certain interpretative statement prepared by the Charter Commission of the Borough of Waldwick, to be appended to the public question of municipal charter revision on the sample ballot and the official ballot to be used by the voters of Waldwick at the general election to be held on November 8, 1960.
The judgment also directed the County Clerk of Bergen County to substitute in lieu of the charter commission's interpretative statement on file in his office and to be appended to the public question to be set forth on the sample and official ballots the trial court's amended interpretative statement.
The Charter Commission of Waldwick had been created pursuant to N.J.S.A. 40:69A-1 et seq., the Optional Municipal Charter Law (Faulkner Act). After study of Waldwick's present form of local government and the alternate forms available to Waldwick, it filed its report on August 3, 1960 with the municipal clerk. The report contained the charter commission's recommendation of a change to Council-Manager Plan E of the Optional Municipal Charter Law providing for a council of five councilmen to be elected at large and a municipal manager to be appointed by the council. Accordingly, the commission recommended that there be placed on the November 8, 1960 general election ballot a question to read as follows:
"Shall Council-Manager Plan E of the Optional Municipal Charter Law providing for a council of five councilmen to be elected at large be adopted by the Borough of Waldwick?"
There was no issue before the trial court, or here, as to the propriety of the above form of question.
N.J.S.A. 40:69A-15 provides that the charter commission shall frame the question to be placed on the ballot as provided in N.J.S.A. 40:69A-14, "and, if it deems appropriate, an interpretative statement to accompany such question." Thus, the framing of an accompanying interpretative statement is permissive and not mandatory.
*274 Pursuant to that statutory authorization, the Waldwick Charter Commission in its aforesaid report directed that the following interpretative statement shall accompany the question on the ballot:
"A vote of Yes will give Waldwick a modern form of government, with a council of five members elected by the people and a full time, qualified borough manager appointed by the council and accountable to it, and subject to removal by the council.
A vote of No will keep the present borough form of government."
Copies of the charter commission report, with its findings and recommendations, were printed and distributed to every household in Waldwick. No question has been raised as to the charter commission's rights and duties to make its recommendations and to disseminate its views, in the hope that the charter revision plan advocated by it may be adopted by the voters.
The plaintiff, a qualified resident and voter of Waldwick, by complaint filed on September 29, 1960 in the Superior Court, Law Division, challenged the propriety of the interpretative statement framed by the charter commission, alleging that the "said alleged interpretative statement is argumentative and not merely explanatory as required by R.S. 40:69A-15, and is couched in language calculated to induce the voter to cast an affirmative vote on the question presented." Wherefore, plaintiff demanded that the said alleged interpretative statement be stricken from the ballot, or, in the alternative, an interpretative statement merely explanatory in its language be substituted therefor; and that the Bergen County Clerk be restrained from placing said alleged interpretative statement in the sample ballot.
After answer filed by the charter commission, and on motions by each side for summary judgment, the trial court determined that the use of the words "modern" and "qualified" in the above statement should be deleted, because they were unduly "persuasive," rather than merely "interpretative," and therefore not properly included within the permissive *275 interpretative statement. It was also decided that the manager to be appointed by the council was more accurately described in the pertinent statute as a "municipal," rather than a "borough" manager. Accordingly, the trial court amended the interpretative statement to be placed on the ballot to read as follows:
"A vote of Yes will give Waldwick a form of government, with a council of five members elected by the people and a full time municipal manager appointed by the council and accountable to it, and subject to removal by the council.
A vote of No will keep the present municipal form of government."
The summary judgment also directed the Bergen County Clerk to substitute on the sample and official ballots the interpretative statement as amended by the court in lieu of that prepared by the charter commission.
It is the judgment of this court that the charter commission's interpretative statement exceeded the limits of propriety in the particulars pointed out by the trial court. A fair reading of the challenged statement, with its utilization of the words "modern" and "qualified," leads to the conclusion that the charter commission is advising the voter on the face of the ballot to cast an affirmative vote. It may not carry its recommendation for a change of local government that far. It has properly stated its findings and views most completely in its 42-page printed report and has given that report wide circulation. We presume that it has also by other suitable publicity advocated the adoption of its recommendation by the voters of Waldwick. But it may not, through the medium of an allegedly "interpretative" statement, invade the polling place and enter the election booth to urge the voter to cast his vote for its cause, no matter how sincerely the charter commission may feel about the desired change.
Electioneering at the polling place and within 100 feet thereof is prohibited by our election laws, N.J.S.A. 19:34-15. That salutary rule is equally applicable not only *276 in the selection of candidates, but also in deciding public questions. The coloring attached to the interpretative statement prepared by the Waldwick Charter Commission is a polite form of electioneering for a "yes" vote. It is improper. It goes beyond the limitations of reasonableness implicit in the authority to frame an "interpretative" statement. It is one thing to explain the proposed change of government; it is quite a different thing to characterize it and, by clear implication, contrast it with the existing form of government, so as to solicit an affirmative vote.
The charter commission points to the fact that interpretative statements, practically identical in language to that in the instant case, or even with more persuasive verbiage, were used by charter commissions in Elizabeth, Livingston, Springfield, Franklin, and Long Branch. While this fact would support an argument that the charter commission here acted in good faith, because it did only what others similarly situated had done in the past, it will not necessarily support its contention of propriety. It was conceded that in those other municipalities the interpretative statements were not challenged by any court proceedings. Hence, the issue was never squarely presented for court determination.
It is also noteworthy that in Newark and Jersey City, where we might ordinarily expect closer political scrutiny and more ready court challenge, the interpretative statements were couched in more moderate language and with no persuasive coloring. Thus, the Newark statement was:
"A vote of YES is a vote to give Newark a New Charter with an elected mayor and council. A vote of No is a vote to keep the present Commission Form of government."
Similarly, a statement submitted to the voters of Jersey City read:
"A vote of yes is a vote to change to a new form of government; a vote of no is a vote to continue the present commission form."
*277 Before the trial court, and here, counsel for the charter commission argued that the complaint should be dismissed on the ground that it was not filed within the 45-day time limit provided by R.R. 4:88-15(a). It was contended that the charter commission report was filed on August 3, 1960, but the complaint challenging the propriety of its recommended interpretative statement was not filed until September 29, 1960. However, the trial court disposed of this technical objection with the observation that there was some doubt about its applicability here, since relief was being sought against the county clerk, who had not yet caused the disputed statement to be placed upon the ballot; and for the further and more conclusive reason that R.R. 4:88-15(c) expressly provides that "where it is manifest that the interests of justice require, the court may enlarge the period of time provided for in paragraph (a) or (b) * * *." We find that the trial court ruled properly and validly exercised its discretion in relaxing the 45-day limitation, since it is manifest that the interests of justice required a resolution of this election dispute on the merits. The voter's right to exercise a free and independent judgment must be jealously safeguarded.
At the oral argument, counsel for the defendant charter commission stated that, if the interpretative statement as originally prepared by it was not approved by this court, the charter commission would prefer to have no interpretative statement on the ballot, rather than the trial court's modification. When queried as to the possibility of the charter commission preparing an alternate interpretative statement, counsel informed this court that the necessity of a final decision by October 17 rendered such a course impracticable. Hence, no alternate statement was offered or considered. Plaintiff's attorney agreed at the oral argument before us that the plaintiff would be satisfied if no interpretative statement accompanied the question to be voted upon.
Since N.J.S.A. 40:69A-15 vests in the charter commission the discretion as to whether an interpretative *278 statement will accompany the question submitted to the voters, it is our judgment that the charter commission has the final right to decide that the question will be submitted without any statement, rather than with a statement modified by the court without its consent and over its objection.
Therefore, since the charter commission refuses to accept the changes in the statement recommended by the trial court, the question will be submitted to the voters of Waldwick without any accompanying interpretative statement. Accordingly, except as thus modified, the judgment of the trial court is affirmed.
GOLDMANN, S.J.A.D. (concurring).
The complaint demanded judgment striking the charter commission's interpretative statement from the ballot or, in the alternative, substituting one that was merely explanatory in its language. There is nothing in the Optional Municipal Charter Law (Faulkner Act), N.J.S.A. 40:69A-1 et seq., which directly or indirectly empowers the trial court to amend a charter commission's interpretative statement or to substitute another in its place. The court may only approve such a statement, or disapprove and order it stricken from the ballot.
I agree that the interpretative statement prepared by the Waldwick Charter Commission exceeds the bounds of reasonable interpretation.
The charter commission is, of course, a creature of statute and comes into existence after election by the qualified voters, as provided by N.J.S.A. 40:69A-2 to 5. Its function and duty is to
"study the form of government of the municipality, to compare it with other available forms under the laws of this State, to determine whether or not in its judgment the government of the municipality could be strengthened, made more clearly responsive or accountable to the people or whether its operation could be more economical or efficient, under a changed form of government." N.J.S.A. 40:69A-7.
The statute goes on to direct the commission to "report its findings and recommendations to the citizens of the municipality *279 * * *." N.J.S.A. 40:69A-10. It is discharged upon the filing of its report, but if its recommendations require further procedure on the part of the governing body or the people of the municipality  as is the case where it recommends that a referendum be held on the question of adopting the optional form of government specified by it, or that the governing body petition the Legislature for a special charter or amendments to the existing charter, N.J.S.A. 40:69A-12, 15 and 16  the commission is not discharged until the procedure required under these sections has finally been concluded. N.J.S.A. 40:69A-11(a).
Appellant charter commission correctly observes that the use of a specially elected charter commission to advise the people whether in its judgment a change in the municipal charter would be desirable, is a distinct contribution to local government in New Jersey. Such a commission functions as an agency of the voters in selecting from among the alternative optional forms of local government. Bucino v. Malone, 12 N.J. 330, 340 (1953). From this it is argued that when a charter commission prepares an interpretative statement, it acts under specific authority to do so. N.J.S.A. 40:69A-15. It is doing only what it was chosen to do  to advise the people  and therefore "the exercise of its discretion cannot be measured by any conventional standard."
The charter commission contends that "interpretative statement" is capable of very broad denotation: it may convert the technical to the popular; it may illustrate; it may appeal to the senses or to reason, inductively or deductively. In any case, the statement is the product of the commission's basic mandate to exercise its "judgment" as to the needs of local government.
The right of a charter commission under N.J.S.A. 40:69A-15 to accompany the question on the ballot with an interpretative statement, if it deems this appropriate, does not have the broad sweep ascribed to it by appellant. The legislative purpose in granting a charter commission this privilege was to leave it to the commission's discretion to *280 determine whether the ordinary voter could clearly understand the meaning of the question itself, or whether an explanatory statement supplementing the question would aid him in exercising his right to an uninfluenced choice at the polls. A commission may explain the essential meaning of the question, but its interpretative statement may not be partisan. As the trial judge so aptly stated, it may not electioneer on the ballot itself.
We deal here with the power of words  their coloring, connotation and persuasion. Appellant argues that a charter commission is not neutral, nor is its report. Its very purpose is to take a position, and to advise the voters who created it for this purpose. The interpretative statement can be useful only if it goes beyond saying that a "yes" vote means yes, and a "no" vote no. The whole scheme of the statute, it is contended, anticipates that the interpretative statement will be another exercise of the charter commission's judgment.
It is entirely true that a charter commission is not a neutral body, that its report is not neutral, and that its duty is to take a position and to advise the voters. But the statute gives a charter commission the broadest opportunity to be partisan and to express its partisanship  but at the proper time and place. It must hold public hearings, and may hold private hearings and sponsor public forums. Generally, it is required to "provide for the widest public information and discussion respecting the purposes and progress of its work." N.J.S.A. 40:69A-9. Within nine calendar months from its election it must report its findings and recommendations, and publish its final report in sufficient copies for distribution to all interested citizens upon request. N.J.S.A. 40:69A-10. (All registered voters of the Borough of Waldwick have, in fact, been given copies of the charter commission report.) If the commission recommends the adoption of any of the optional plans of government authorized under the Faulkner Act, its report must contain the complete plan as recommended. Ibid.
*281 Obviously, a charter commission can recommend not only a change of government, but in a variety of ways advocate the adoption of its recommendations. But it must do so short of influencing voters inside the election booth itself. It may argue its cause and seek support for its report and recommendations short of the polling place.
The right to append an interpretative statement to a public question is not a new practice in New Jersey. In this connection, it is informative to compare the provisions of N.J.S.A. 19:3-6, the General Election Act:
"Any public question voted upon at an election shall be presented in simple language that can be easily understood by the voter. The printed phrasing of said question on the ballots shall clearly set forth the true purpose of the matter being voted upon. Where the question concerns any amendment to the State Constitution, or any act or statute or other legal titles of any nature, the printed phrasing on the ballots shall include a brief statement interpreting same. In event that in any statute the public question to be voted upon is so stated as not clearly to set forth the true purpose of the matter being voted upon and no provision is made in said statute for presenting the same in simple language or printing upon the ballots a brief statement interpreting the same, there may be added on the ballots to be used in voting upon the question, a brief statement interpreting the same and setting forth the true purpose of the matter being voted upon in addition to the statement of the public question required by the statute itself. * * *"
N.J.S.A. 40:69A-15, as noted, does make provision for an interpretative statement. Plaintiff's argument that such an interpretative statement presumably must have the same characteristics as the "brief statement interpretating same" provided for in the general statute just quoted, is not inappropriate. It may be observed that N.J.S.A. 40:69A-15 refers to the general statute when it provides that the question of adopting the form of government recommended by the charter commission "shall be submitted to the voters of the municipality in the same manner as other public questions to be voted upon by the voters of a single municipality."
I agree with my colleagues that the Waldwick Charter Commission exceeded the bounds of reasonable interpretation *282 by the use of the words "modern" and "qualified" in its interpretative statement when referring to the form of government and the municipal manager, respectively. It does not matter, as the charter commission argues, that the statement was not false in using the criticized words. The council-manager form, first adopted in this country in the beginning of this century, is certainly "modern" when compared with the borough form of government which came to us from England. The word "qualified," used in describing the municipal manager, reflects the provision in N.J.S.A. 40:69A-92 that the manager be chosen by the council "solely on the basis of his executive and administrative qualifications with special reference to his actual experience in, or his knowledge of, accepted practice in respect to the duties of his office as hereinafter set forth." But the impact of these two adjectives goes beyond technical accuracy. They are words of advocacy, slanted in favor of the recommended form of government, and this whether or not such was the intended purpose of the charter commission.
The trial judge was entirely correct in waiving the time requirements of R.R. 4:88-15(a), and this under the general relaxation provision of R.R. 1:27A or the specific authority given by R.R. 4:88-15(c).