181 N.J. Super. 7 (1981)
436 A.2d 535
WILLIAM L. GORMLEY, INDIVIDUALLY, AND AS A MEMBER OF THE GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY, APPELLANT,
v.
DONALD P. LAN, SECRETARY OF STATE OF THE STATE OF NEW JERSEY, JAMES ZAZZALI, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1981.
Decided October 1, 1981.
*9 Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.
Daryl F. Todd argued the cause for appellant (Previti, Todd & Gemmel, attorneys; William E. Nugent on the brief).
Michael R. Clancy, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General, attorney).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
In July 1981 the Legislature passed concurrent resolutions providing that there be included on the 1981 ballot a proposed amendment to the New Jersey Constitution which amendment would provide:
No lands that were formerly tidal flowed, but which have not been tidal flowed at any time for a period of 40 years, shall be deemed riparian lands, or lands subject to a riparian claim, and the passage of that period shall be a good and sufficient bar to any such claim, unless during that period the State has specifically defined and asserted such a claim pursuant to law. This section shall apply to lands which have not been tidal flowed at any time during the 40 years immediately preceding adoption of this amendment with respect to any claim not specifically defined and asserted by the State within 1 year of the adoption of this amendment.
The form of the question to be put to the voters in the amendment was directed by the Legislature to read as follows:

*10 RIPARIAN LANDS
Do you approve the amendment to Article VIII of the Constitution adding a new Section V and paragraph 1 thereto, requiring that lands shall have been tidal flowed within the last 40 years to be deemed riparian lands subject to State claims, and barring State claims not defined and asserted by law within that period?
The adoption of these resolutions triggered the application of N.J.S.A. 19:3-6, which provides in material part:
Any public question voted upon at an election shall be presented in simple language that can be easily understood by the voter. The printed phrasing of said question on the ballots shall clearly set forth the true purpose of the matter being voted upon. Where the question concerns any amendment to the State Constitution, or any act or statute or other legal titles of any nature, the printed phrasing on the ballots shall include a brief statement interpreting same. In event that in any statute the public question to be voted upon is so stated as not clearly to set forth the true purpose of the matter being voted upon and no provision is made in said statute for presenting the same in simple language or printing upon the ballots a brief statement interpreting the same, there may be added on the ballots to be used in voting upon the question, a brief statement interpreting the same and setting forth the true purpose of the matter being voted upon in addition to the statement of the public question required by the statute itself.
The Attorney General on July 31, 1981, pursuant to N.J.S.A. 19:3-6, submitted a proposed statement to the Secretary of State. This statement was twice revised and in its final form adopted on September 24, 1981 reads:
Land now or formerly flowed by the tide belongs to the people of this State. If these public lands are sold by the State, the monies received are placed in a fund to support public education for all schools in the State. The State has been locating and mapping these lands but the process has not been completed. Adoption of this amendment would require that the State establish any claims within a one year period to lands not flowed by the tides during the past 40 years or the public's claim to that land would be lost to private owners without any compensation whatsoever to the school fund on behalf of public education.
On September 25, 1981 appellant filed a pleading with this court entitled a verified complaint. In fact, the action of the Secretary of State in adopting the proposed form of notice was a final decision or action of a state administrative officer and consequently was appealable to this court as a matter of right. R. 2:2-3(a). Thus, we treated the verified complaint as a notice of appeal. Appellant simultaneously with the filing of his *11 appeal sought a stay of the printing of the ballots for the election. We heard oral argument from him as well as from the Attorney General and issued such a stay. In view of the urgency of the matter we accelerated the time for filing briefs and scheduled argument for October 1, 1981.
Appellant's basic contentions are that the interpretive statement prepared by the Attorney General and adopted by the Secretary of State is not brief nor interpretive but rather is argumentative; that it subverts the Legislature's intent; that it will mislead the voters, will induce negative votes; that it constitutes electioneering within a polling place contrary to N.J.S.A. 19:34-15, and that the Attorney General has a conflict of interest which should preclude him from participating in drafting the statement. The source of the alleged conflict of interest is that the Attorney General has opposed adoption of the amendment in his official capacity. Finally, appellant asserts that the Assembly Judiciary, Law, Public Safety and Defense Committee had by letter dated September 22, 1981 advised the Secretary of State of the intent of the constitutional amendment as released by the committee. This statement of intent reads substantially different than the statement adopted by the Secretary of State. Appellant has sought the following relief: an injunction against defendants, forbidding them from printing on the ballot the proposed interpretive statement adopted by the Secretary of State; an injunction precluding the Attorney General from participating in the drafting of the interpretive statement, and an order requiring printing of the statement in the form prepared by the Assembly committee on the ballot.
Respondents contend that the interpretive statement as adopted by the Secretary of State accurately and objectively informs the voter of the effect of adoption of the constitutional amendment. They further deny that the Attorney General in any way has a conflict of interest in this matter.
It is not our purpose by this opinion written within the strict time constraints confronting us in this election case to write *12 comprehensively with respect to the history of riparian land law in New Jersey. Nevertheless, this case may not be disposed of without some reference to the underlying law.
As a general rule, the State owns the lands subject to flow by mean high tides unless the State has conveyed its interest in it. O'Neill v. State Highway Dep't, 50 N.J. 307, 323 (1967). Application of this rule to a particular property can sometimes cause difficulties because of problems of ascertaining the precise location of the mean high water mark. The problem of ascertaining ownership is exacerbated by the fact that the line of mean high tide may change. The Supreme Court has held that when the mean high tide line changes, ownership will also change. Thus, erosion will increase the land owned by the State; gradual and imperceptible accretion, even if the product of artificial structures, will increase the ownership of the private owner abutting the tidelands, at least if he did not build the structure and it was not the result of a public project in aid of navigation or unrelated to shore protection. Wildwood Crest v. Masciarella, 51 N.J. 352 (1968). On the other hand, artificial filling of riparian lands cannot divest the State of ownership. Garrett v. State, 118 N.J. Super. 594, 600 (App.Div. 1972). Obviously therefore, when the State claims that lands not presently flowed by tide were once riparian, it is critical to know (assuming that the State can establish that they were ever tide flowed) how they came to be filled. Was there artificial fill or gradual accretion?
A second fact in understanding this action is that the State has heretofore frequently sold riparian lands. The proceeds from the sale of riparian lands are dedicated by New Jersey statute and the New Jersey Constitution to the support of the public schools. See Newark v. Natural Resource Council, 82 N.J. 530, 546 (1980), cert. den. 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980); Garrett v. State, supra, 118 N.J. Super. at 599.
A third historical point to note in considering the interpretive statement and amendment is that there has been a long-standing and continuing dispute over riparian land claims. Newark *13 v. Natural Resource Council, supra, 82 N.J. at 534. As a result of this dispute the State undertook starting around 1970, to map its claims. Id. at 537. The mapping is not complete.
Finally, a fourth consideration is that the impact of artificial disturbance or natural accretion on lands can give rise to difficult proof problems. In O'Neill v. State Highway Dep't, supra, 50 N.J. at 326-327, the Supreme Court announced that "the burden should be upon the party who challenges the existing scene, whether the alterations were due to State or to private activity, to satisfy the trier of the facts that the tideland status of the property was changed by such artificial measures." But even proof that land was artificially filled will not ordinarily relieve the State of its burden of proof to show that the lands are riparian if no longer tide flowed, though in some circumstances proof that a private owner has filled land may justify an inference that the natural condition of the land was riparian. State v. Council, 60 N.J. 199 (1972).
Against this background the misleading nature of respondents' statement is obvious. The constitutional amendment can apply only to lands not flowed by tide for 40 years. Such lands are presumptively not owned by the State since they are not tidal under the existing scene. Thus, the opening sentence in the interpretive statement that "Land now or formerly flowed by the tide belongs to the people of this State," is presumptively inapplicable or incorrect as to all the lands subject to the proposed amendment. It in fact grossly misstates it because the statement creates the impression that the proposed amendment will give away public land. Further, the fact that the proceeds from the sale of the lands go to the public school fund is not germane. We fail to see why the allocation of the proceeds to a particular state activity is significant within the context of this amendment. We are not dealing with a proposed amendment to transfer assets from one public fund to another. Indeed, we think it perfectly obvious that this statement was drafted in order to encourage the voters to defeat the amendment. The statement is as biased or one-sided as would be a *14 statement that the purpose of the amendment is to save landowners from the assertion of stale claims by the State. In the circumstances its use must be enjoined. See Guernsey v. Allen, 63 N.J. Super. 270 (App.Div. 1960). We do not agree, however, that the Attorney General should be disqualified from participating in any redraft. He is, after all, counsel to the Secretary of State. N.J.S.A. 52:17A-4(e).
We think that the following statement would fully satisfy the mandate of N.J.S.A. 19:3-6:
By the terms of this proposed amendment the State would relinquish all its claims, if any, in lands formerly flowed by tidal waters, which have not been so flowed by tidal waters within the last 40 years  unless the State asserts its claims thereto within one year immediately following adoption of this amendment.
However, we do not go so far at this time as to mandate its use. Our disposition renders appellant's other contention moot.
The interpretive statement as adopted by the Secretary of State is declared invalid and its use in the forthcoming election is enjoined. The matter is remanded to the Secretary of State with directions to comply with N.J.S.A. 19:3-6. The Attorney General may serve as his counsel in the matter. We retain jurisdiction. Upon a new statement being adopted, appellant shall be forthwith notified and he may, if he deems it appropriate, apply to this court for further relief.