833 A.2d 106 (2003)
363 N.J. Super. 411
CITY OF LONG BRANCH, a Municipal Corporation of the State of NJ, Plaintiff,
v.
Jui Yung LIU and Elizabeth Liu, his wife, Administrator of Small Business Administration, Adelina's Pizza, Jimmy's Pizza, Horaph Co., L.L.C. t/a Dairy King, Gifted Sara, Wizard World, Inc., Jimmy Jetty, Inc., Speciality Merchandise Association, Funhouse, Club 115 and Jimmy's Famous Boardwalk Hotdogs, Defendants.
Superior Court of New Jersey, Law Division.
February 3, 2003.
*107 Lawrence H. Shapiro, Ocean, for plaintiff (Ansell Zaro, Grimm & Aaron, attorneys).
Paul V. Fernicola, for plaintiff (Bowe & Fernicola, attorneys).
Peter H. Wegener, Lakewood, for defendants Liu, Adelina's Pizza, Jimmy's Pizza, Jimmy Jetty, Inc. (Bathgate, Wegener & Wolf, attorneys).
O'HAGAN, J.S.C.
Does an oceanfront property owner obtain title to newly created contiguous lands, formed as a result of a beach replenishment program funded by the Federal government with participation by state, county and local governments?
The defendant property owners, Jui Yung Liu and Elizabeth Liu, relying upon the doctrine of accretion, maintain such property, landward of the newly created mean high water mark, becomes theirs as a matter of law. Liu, as well, argues that because the "new beach" land was not created pursuant to a project to aid navigation, it becomes his, bearing in mind that he owns the upland parcel. Plaintiff, City of Long Branch, relying on the doctrine of avulsion, maintains that the newly created uplands, which begins at the high water mark existing on the date the beach replenishment program commenced and extend eastward at least 225 feet, do not belong to the defendants Liu, but rather are State owned. Plaintiff City understands that defendants Liu and others have an easement to cross such lands to gain access to the ocean.
The issue arises in the context of a condemnation action. It is, therefore, obvious that the court's resolution of the issue has implications regarding the property's fair market value.
Previously the court denied the defendant property owners' application to amend the description used by the plaintiff City in its condemning documents from that set forth in the August 25, 1977, deed wherein defendants acquired title to a new description which obviously extend 225 feet out further over the newly created land. That is to say, to the new mean high water mark created as a direct result of the beach replenishment program.
As plaintiff accurately points out, defendants, in their present motion, merely reiterate arguments previously made. On that basis, plaintiff argues the court should not even consider defendant's reconsideration application. However, the court's earlier ruling was interlocutory. R. 4:49-2. The issue presented is somewhat unique in New Jersey, although similar issues have *108 been litigated elsewhere in both federal and state courts with widely varying results. Consequently, the court should properly entertain defendants' application for reconsideration. Johnson v. Cyklop Strapping Corp. 220 N.J.Super. 250, 263, 531 A.2d 1078 (App.Div.1987), certif. den. 110 N.J. 196, 540 A.2d 189 (1988).
For reasons hereafter described, the defendants' application to require an amendment of the complaint is denied.
Defendants own premises known as Lot 2, in Block 223, situated on the east side of Ocean Avenue in Long Branch. The description set forth in the 1977 deed, above mentioned, establishes the property has 417+ feet of frontage along Ocean Avenue and extends eastward to the mean high water mark which was described as 125 feet to the east. The defendants Liu have never had any riparian rights to lands extending seaward of the mean high water mark, wherever that line might be.
The Federal government, recognizing the steady erosion of lands fronting the Atlantic Ocean in and around this area, adopted 33 U.S.C.A., ¶ 426e and declared it to be the policy of the United States to promote shore protection projects that encourage the protection, restoration and enhancement of sandy beaches.
In furtherance of the legislation, the federal, state, county and local governments (in this instance, the City of Long Branch) have contributed a total of multi-millions of dollars to a program which has grossly widened existing beaches in the City, inclusive of, but not limited to, the premises involved here. The project, as it concerns the State of New Jersey, always with the participation of the Federal and state government, will ultimately involve counties and municipalities up and down the coastline in New Jersey.
To widen the beach in this and other locations, sand was taken from below off-shore waters and, in effect, thrown westward onto the existing shoreline, ultimately, of course, extending that shoreline to the east. As it concerned individual properties, inclusive of the defendants', the replenishment program was rapidly completed, extending at the most over a couple of weeks being completed here in calendar year 1999 while the Declaration of Taking was filed in this action on October 3, 2001.
Defendants Liu, as noted, argue the additional beach resulted from natural accretion, in part, and in part because of the government's program to replenish beaches. In either case, defendants maintain the property becomes theirs by operation of law. The defendants contend, as well, that it is the State's burden to distinguish that portion of the beach created by natural accretion from that portion created as a result of the government's replenishment program. O'Neill v. State Hwy. Dept., 50 N.J. 307, 235 A.2d 1 (1967).
Accretion is defined as a gradual, imperceptible buildup of land caused by natural forces. Housing Authority of City of Atlantic City v. State, 193 N.J.Super. 176, 179, 472 A.2d 612 (App.Div.1984), citing Borough of Wildwood Crest v. Masciarella, 51 N.J. 352, 357, 240 A.2d 665 (1968). In new Jersey, in some circumstances, additional land has been deemed to be as a consequence of accretion notwithstanding the fact that an artificial structure or means constructed by the government plays a part, even a significant part, in the slow, gradual buildup of the land. Wildwood Crest v. Masciarella, supra at 352, 359, 240 A.2d 665 (1968).
As well, defendants cite to cases from other jurisdictions which determined it was the upland property owner who became the owner of lands created as a result of a dredging program, not related *109 specifically to navigation. Michaelson v. Silver Beach Improvement Ass'n, Inc., 342 Mass. 251, 173 N.E.2d 273, 277 (1961). In that case, the sands dredged from tidal flowed waters were dug out and spread over the water at the edge of Michaelson's property, thereby creating a larger beach. That is, the beach now extended out into areas that were previously covered by water. The Massachusetts Supreme Court, finding that the dredging program had nothing to do with navigation, therefore, determined the new land belonged to the upland property owner, reasoning that a most important incident relating to ownership of waterfront property was unrestricted and unimpeded access to the sea.
Defendants cite, as well, to a number of jurisdictions which have awarded title to the adjacent upland property owner in circumstances very much similar to those before the court in this matter.
New Jersey law, however, is to the contrary and, thus, mandates denial of the defendants' application.
Defendants' application to require an amendment of the description set forth in the complaint must be denied on the basis of several different theories or considerations.
Firstly, it must be said the "new beach" area resulted from avulsion, not accretion. Avulsion is described as a forceful detachment or separation, a sudden removal or addition to land caused by either natural or manmade force. Garrett v. State, 118 N.J.Super. 594, 601, 289 A.2d 542 (Ch.Div.1972).
It is well established that land taken suddenly in this manner by force of nature or man remains in the ownership of the one from whom it was taken. Ocean City Association v. Shriver, 64 N.J.L. 550, 555-60, 46 A. 690 (E. & A.1900); Borough of Wildwood Crest, supra, 51 N.J. at 357, 240 A.2d 665 (1968). Approached from the contrary view, it is clear in New Jersey that the owner of the property to which the soil or sand suddenly becomes attached, or melds, does not own the additional land, O'Neill, supra, 50 N.J. at 324, 235 A.2d 1 (1967).
Here, the new sand comprising the extended dry sand beach was taken from lands constituting part of the public trust belonging to the people of the State of New Jersey.
As noted, the beach replenishment work, as it concerned individual beaches situated in the City of Long Branch, such as defendants, was completed quickly. Therefore, it is the State of New Jersey, not defendants, who owns the property.
Moreover, contrary to defendants' assertion, the matter of Michaelson v. Silver Beach Improvement Ass'n, Inc., supra, offers them no solace. Rather, when the additional sand results from a program of shore protection undertaken by the State, the "new beach" remains under the ownership, control and sovereignty of the State. See Borough of Wildwood Crest v. Masciarella, supra, at 359, 240 A.2d 665. There is no question here, the additional soil creating the new dry sand beach resulted from Federal action to protect the shore. Stated more directly, it is not merely projects undertaken in aid of navigation that preclude ownership by the upland property owner, although the issue arises most frequently in that context.
Finally, when viewed from the perspective of the Public Trust Doctrine, it is clear defendants' application must be denied. Pursuant to that Doctrine, the ownership, dominion, control and/or sovereignty over lands flowed by tidal waters rests with the State in trust for the public. Bor. of Neptune City v. Bor. of Avon-by-the Sea, 61 N.J. 296, 309, 294 A.2d 47 (1972). Such ownership cannot be taken away either *110 by adverse possession or prescription. O'Neill v. The State Highway Department, supra, 50 N.J. at 320, 235 A.2d 1. Indeed, such ownership continues to extend to lands that were previously tidal flowed, even if same are now upland, if the additional dry lands were created by action of man, even if at the direction of the State. Garrett, supra, 118 N.J.Super. at 602, 289 A.2d 542 (Ch.Div.1972); Gormley v. Lan, 181 N.J.Super. 7, 12, 436 A.2d 535 (App. Div.1981), aff'd on other grounds, 88 N.J. 26, 438 A.2d 519 (1981); National Ass'n of Home Builders of the U.S. v. N.J. Department of Environmental Protection, 64 F.Supp.2d 354, 358 (D.N.J.1999). Indeed, in National Ass'n of Home Builders, the District Court determined there was no taking of property even though owners of reclaimed or filled property along the Hudson River were required to construct and maintain, at their own cost and expense, a thirty foot walkway running across the entire waterfront of the individual property. The requirement to make such construction was pursuant to the rule of the New Jersey Waterfront Development Law. Id. at 356; N.J.S.A. 12:5-1 et seq. Further, the public-at-large was to have access to the constructed walkway. Id. at 358-59.
Tidally flowed land is always subject to the Public Trust Doctrine. That is to say, the Public Trust Doctrine, as understood in New Jersey, requires, Karam v. Dept. of Envir. Protection, 308 N.J.Super. 225, 238-39, 705 A.2d 1221 (App.Div.), aff'd o.b., 157 N.J. 187, 723 A.2d 943 (1999), cert. den., 528 U.S. 814, 120 S.Ct. 51, 145 L.Ed.2d 45 (1999), that an easement be granted in favor of the public-at-large across upland properties even if in private ownership to allow reasonable access to the ocean and, indeed, the beach below the high water mark. Matthews v. Bay Head Imp. Ass'n, 95 N.J. 306, 311, 471 A.2d 355, cert. den. sub. nom., Bay Head Improvement Ass'n v. Matthews, 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984).
The public right to lands newly created as a result of sands taken from the public trust is by no means a new concept in New Jersey. See Garrett v. State, supra; Stevens v. Paterson Railroad Co., 34 N.J.L 532 (E. & A. 1870).
For this reason, it is concluded the newly created dry sand beach, i.e. the area to the east of the previous high water mark, belongs not to the defendants Liu, but rather to the State of New Jersey.
The court denies, as well, defendants' contentions to the effect it is the City's burden to establish which portion of the dry sand beach east of the prior high water mark was created pursuant to the beach replenishment program of the government as opposed to the natural process of accretion. In the normal circumstance, the person challenging the status quo has the burden of establishing which portion of the additional lands was created as a product of avulsion or otherwise. O'Neill v. The State Highway Department, supra, 50 N.J. at 326-27, 235 A.2d 1. However, the application of such general rule, in this circumstance, defies logic. That is, the Federal statute was adopted and the policy of beach protection created because ocean beaches, particularly in this area, in the State of New Jersey, have been steadily eroding. Although the defendants assert that at least a portion of the additional dry sand beach occurred as a consequence of accretion, defendants offer no proof or logic to support their bare naked allegation. Rather, there is nothing significant about the Liu property which would suggest it was the depositary of sands eroded from other beaches. For instance, it is well established that Sandy Hook has been the *111 repository of sands eroded from beaches to its south.
Therefore, the court concludes that, to the extent defendants argue the additional sands resulted from accretion rather than the governmental program of beach replenishment, it is the defendants' burden to establish same.