THOMAS R. VENA, J.S.C.
*314 Preliminary Statement
This matter comes before the court on the City of Orange Township Board of Education's ("plaintiff's") verified complaint and order to show cause to restrain the Essex County Board of Elections ("County Board") from certifying the results of the City of Orange Township's March 28, 2017, special school board election and to restrain the City Council of the City of Orange Township ("City Council") from taking action in furtherance of the November 8, 2016, referendum, which converted the City of Orange Township School District from a Type I school district, one in which the school board members are appointed by the mayor of the City of Orange Township, to a Type II school district, one in which the school board members are elected by the residents of the City of Orange Township.
The defendants in this matter are the City Council, the City of Orange Township ("City"), and the County Board. When appropriate, the court will refer to these parties collectively as "defendants."
Additionally, the Rutgers University Constitutional Law Clinic, under the supervision of Alexis Karteron, and authorized to practice law in New Jersey pursuant to Rule 1:21-3(b), has filed a motion for leave to appear as amicus curiae and to represent S. George Reed, a concerned citizen and long-established City resident. The Clinic has filed an amicus brief to participate in oral argument on April 13, 2017, to further emphasize its position that the change from an appointed school board to an elected school board should be upheld.
Introduction
The genesis of this matter can be traced to July 6, 2016, the date which the City Council adopted a resolution which called for a referendum at its next general election, scheduled for November 8, 2016, for the City to change from an appointed school board, a *315 Type I school district, to an elected school board, a Type II school district. The first school board election was to be held during the November 2017 general election.
Plaintiff argues that the City's municipal public question and interpretive statement-both of which appeared on the City's November 8, 2016, ballot-were misleading and contrary to N.J.S.A. 19:3-6 in that they did not adequately inform the voters of what it meant to change from a Type I school district to a Type II school district. Defendants counter that the public question and interpretive statement both fully complied with N.J.S.A. 19:3-6, as both satisfactorily informed the voters of the true purpose of the matter being voted upon so as to make the voters generally aware of what they were voting for.
Procedural History
On February 3, 2017, plaintiff filed a petition for emergent relief before the Commissioner of Education for essentially the same relief that it seeks from this court. Plaintiff's petition was sent by the Commissioner to the Office of Administrative Law and assigned to the Honorable Michael Antoniewicz, an Administrative Law Judge, who, on February 28, 2017, determined that the Superior Court is the proper forum. With the special school election set for March 14, 2017, all parties were summoned to this court on March 13, 2017. It was on that date that the court entered an order postponing the special school election, as a result of an impending *1200 and significant winter storm, to March 28, 2017.
Once that election took place, per the court's order of March 15, 2017, the County Board was enjoined from certifying the results of said election until further notice from the court. This enjoinment was ordered with the consent of all parties. The March 15, 2017, order also included a provision wherein plaintiff was ordered to amend its verified complaint to include the City as a defendant, which plaintiff did.
Statement of Facts
On July 6, 2016, the City Council passed resolution 125-2016, which called for a referendum at the next general election, scheduled *316 for November 8, 2016, for the City to change from an appointed school board, a Type I school district, to an elected school board, a Type II school district, pursuant to N.J.S.A. 18A:9-4.
Type I school districts have a Board of School Estimate pursuant to N.J.S.A. 18A:22-1, a group in charge of budgets and spending pursuant to N.J.S.A. 18A:22-7. Generally, these boards operate in the following manner: when issues of spending arise, or when necessary to bond for capital projects, the Board of School Estimate passes a resolution and the municipality then passes a bond ordinance. Type II school districts do not have a Board of School Estimate. In Type II school districts, bonding for capital projects must be approved by public referendum.
In accordance with resolution 125-2016, on November 8, 2016, the referendum appeared on the ballot. The municipal public question stated as follows: "Shall the Board of Education of the City of Orange Township be changed from a board that is appointed by the Mayor, to a board that is elected by the residents of Orange, effective immediately, with the first school board election to be held during the November 2017 general election[?]" The accompanying interpretive statement read: "Presently the Mayor appoints members to serve on the City's Board of Education. If changed to a board of elected members, the residents will have more control over who serves on the board of education."
City residents voted to switch the district from a Type I school district to a Type II school district, with approximately 77% of the voters expressing their desire for the change. Soon after the election, the City Council passed a first reading ordinance which provided for about $2.5 million worth of capital improvements throughout the school system. This ordinance was passed, without the appropriate authority, on December 20, 2016. City Council admits this was a mistake, and the City does not contend otherwise. On March 28, 2017, a special school board election took place. This election resulted in the addition of two members to the *317 school board. The board, with this addition, now consists of nine members.
Legal Analysis
To begin, the court is fully cognizant of the fact that while this dispute specifically involves the way in which the City's Board of Education is to be constructed, the reason that the board's construction matters is because it has the potential to impact what is really the core concern of this matter: the well-being of the City's students. The court's opinion is issued with this understanding in mind.
With that having been said, plaintiff brings its verified complaint and order to show cause to restrain the County Board from certifying the results of the City's March 28, 2017, special school board election and to restrain the City Council from taking action in furtherance of the November 8, 2016, referendum, which converted the City's School District from a Type I school district, one in which the school *1201 board members are appointed by the mayor of the City, to a Type II school district, one in which the school board members are elected by the residents of the City.
Plaintiff argues that the City's municipal public question and interpretive statement-both of which appeared on the City's November 8, 2016, ballot-were misleading and contrary to law, specifically N.J.S.A. 19:3-6. The municipal public question stated as follows: "Shall the Board of Education of the City of Orange Township be changed from a board that is appointed by the Mayor, to a board that is elected by the residents of Orange, effective immediately, with the first school board election to be held during the November 2017 general election[?]" The interpretive statement read: "Presently the Mayor appoints members to serve on the City's Board of Education. If changed to a board of elected members, the residents will have more control over who serves on the board of education." Plaintiff argues that the question was misleading because the first school board election was actually to be held in March 2017-not in November 2017-a fact that defendants knew at the time the question was composed.
*318 The March 2017 election would see the school board increase in size from seven members to nine.
As for the interpretive statement, plaintiff contends that it "impermissibly urged passage" of the July 6, 2016, resolution, was not approved or contained within a resolution passed by the City Council, and did not serve its most basic purpose, which is to interpret the municipal public question in a way that assists the public in understanding the question being posed to them, and in turn, what they are voting for, i.e. , the potential consequences of their vote. Specifically, plaintiff argues that the public was not informed that the school district would change from a Type I to a Type II district, that the Board of School Estimate would be eliminated, that future bonding for capital projects would have to be approved by public referendum, that future bonding for capital projects would be based on the credit of the district as opposed to the City, that the size of the Board of Education would increase from seven members to nine, and that the first election of members of the Board of Education would take place in March 2017.
In light of all of this, plaintiff argues that the referendum was improper, was "procedurally and substantively flawed," and has resulted in a "direct and negative impact on the capital needs" of the City's school district.
Conversely, the City Council argues that plaintiff's request for relief is time-barred, and that even if it is not, plaintiff fails to meet the standard for injunctive relief because there was nothing procedurally or substantively improper about how the municipal public question and interpretive statement were presented and voted on. The City echoes the City Council's argument, emphasizing that every effort was made to have both the municipal public question and interpretive statement substantially comply with N.J.S.A. 19:3-6.
The Rutgers University Constitutional Law Clinic, on behalf of amicus S. George Reed, makes arguments similar to those of the City Council and the City, with special emphasis placed on the importance of respecting the right to vote and honoring the vote *319 which occurred in this matter. The Clinic's brief focuses mainly on the fourth prong of the analysis below, that which the court describes as the relative hardship prong and what the Clinic refers to as the balancing of equities.
I. Plaintiff's Application is Not Time-Barred
City Council's argument that plaintiff's application to the court is time-barred *1202 must fail. City Council argues that under Rule 4:69-6(a), plaintiff had 45 days, beginning from the accrual of the right to review, hearing, or relief claimed-presumably, in this case, November 8, 2016-to file this application. City Council then notes that courts may enlarge this period of time in instances "where it is manifest that the interest of justice so requires" pursuant to Rule 4:69-6(c).
Here, as plaintiff notes in its reply brief and as will be discussed hereafter, it is clear that confusion as to the vote's consequences was prevalent. Thus, in this case, for the reason just stated and for all the reasons that follow, the court so finds that the interest of justice requires relaxation of the time-bar provided by Rule 4:69(a).
II. The Standard for a Court to Issue Injunctive Relief
Our Supreme Court has noted that "New Jersey has long recognized, in a wide variety of contexts, the power of the judiciary to 'prevent some threatening, irreparable mischief, which should be averted until opportunity is afforded for a full and deliberate investigation of the case.' " Crowe v. De Gioia , 90 N.J. 126, 132, 447 A .2d 173 (1982) (citation omitted). The Supreme Court also noted that the "most sensitive exercise of judicial discretion" must be observed when electing whether or not to issue preliminary injunctive relief. Ibid.
Further, the Supreme Court stated that there are certain principles which must be considered in a court's decision-making process. Ibid. These principles include: a preliminary injunction should not issue except when necessary to prevent irreparable *320 harm, temporary relief should be withheld when the legal right underlying plaintiff's claim is unsettled, a preliminary injunction should not issue absent a showing of a reasonable probability of success on the merits, and the relative hardship to the parties in granting or denying relief. Id. at 132-34, 447 A .2d 173.
A. Plaintiff Has Established the Requisite Showing of Irreparable Harm
The first showing a plaintiff must make when seeking injunctive relief is that it will suffer irreparable harm if the injunction is not granted; in other words, the injunction is necessary to prevent irreparable harm. Ibid. Harm may be considered irreparable if it cannot be remedied by monetary damages. Id. at 133, 447 A .2d 173.
Plaintiff argues that there has been an adequate showing of irreparable harm because the harm in this case is that voters were not advised, pursuant to N.J.S.A. 19:36, of the "true purpose" of the municipal public question-and in turn, could not grasp the meaningfulness of their vote in terms of consequence and scope-when they went to the polls on November 8, 2016. Thus, plaintiff argues that this lack of advisement "touches upon" the constitutional right of the City's residents to vote, and that under Garden State Equality v. Dow , 433 N.J.Super. 347, 353, 79 A .3d 479 (Law Div. 2013), a deprivation of a constitutional right may suffice to establish irreparable harm.
To repeat, the municipal public question stated as follows: "Shall the Board of Education of the City of Orange Township be changed from a board that is appointed by the Mayor, to a board that is elected by the residents of Orange, effective immediately, with the first school board election to be held during the November 2017 general election[?]" The interpretive statement read: "Presently the Mayor appoints members to serve on the City's Board of Education. If changed to a board of elected members, the residents will have more *1203 control over who serves on the board of education." *321 Plaintiff argues that the municipal public question and interpretive statement failed to inform City residents that the school district would change from a Type I to a Type II district, that the Board of School Estimate would be eliminated, that future bonding for capital projects would have to be approved by public referendum, that future bonding for capital projects would be based on the credit of the district as opposed to the City, that the size of the Board of Education would increase from seven members to nine, and that the first election of members of the Board of Education would take place in March 2017. In plaintiff's estimation, all of this amounts to a deprivation of City residents' constitutional rights.
Plaintiff also asserts that there is tangible harm it believes has resulted from the deficient municipal public question and interpretive statement. As one example, plaintiff cites the City Council's supposed passage, on December 20, 2016, of a $2.5 million bond ordinance which would have allowed for "improvements to various buildings and grounds on behalf of the Orange Board of Education." Under In re Board of Education of Upper Freehold Regional School District , 86 N.J. 265, 268, 430 A .2d 905 (1981), Type II school districts may not issue bonds pursuant to an ordinance being passed by the governing body of a municipality. Rather, Type II school districts, because they lack a Board of School Estimate, must issue bonds in accordance with voter approval. Ibid. Thus, the December 20, 2016, ordinance was problematic because with the district having changed to a Type II school district approximately six weeks prior, the City Council lacked authority to issue bonds via ordinance.
This money would have gone toward the fixing of boilers, gyms, playgrounds, pipes, and heating systems. It also would have gone toward the facilitation, development, and eventual opening of the district's Science, Technology, Engineering, and Math ("STEM") High School. One of the upsides of the STEM High School is that students would be able to earn associate degrees. Plaintiff was advised in January 2017 that these funds were not available due to *322 the December 20, 2016, ordinance being void. The certifications provided by plaintiff from Dr. Paula E. Howard, Deputy Superintendent of the City's school district, and Adekunle O. James, School Business Administrator, indicate that without the funds originally provided for in the voided ordinance, the quality of schools in the City-on many levels-will suffer. In addition, there remains the very real possibility that teachers within the district will lose their jobs.
City Council, meanwhile, argues that there has been no showing of irreparable harm because the harm proffered by plaintiff is neither substantial nor of an immediate nature. Indeed, City Council argues that under Crowe, "an assertion of irreparable harm ... must be substantial and immediate." However, Crowe is devoid of these requirements. In fact, the word "immediate" appears nowhere in Crowe .
Even if City Council's position was consistent with that of Crowe , City Council misses the point of plaintiff's brief entirely with respect to the constitutional argument, and is incorrect when it comes to the tangible harm plaintiff references. First, with respect to the constitutional argument, not only is the harm plaintiff describes immediate, it is actually already underway. Plaintiff is describing a situation in which the City's residents had their constitutional rights infringed upon. This deprivation is ongoing, and cannot be redressed by any sum of money. Thus, the harm is irreparable under Crowe , save another *1204 referendum with a properly worded and sufficiently detailed municipal public question and interpretive statement.
With respect to the tangible harm plaintiff describes, the court is not persuaded that $2.5 million worth of capital improvements-all of which are at risk-is not substantial. The possibility of layoffs is also a substantial harm. Furthermore, while City Council argues that "there is no assertion that any student will be denied access to quality education as provided under the current Orange Township curriculum," it is not the curriculum itself which is at stake here. It is the quality of the buildings, the grounds, and the *323 utilities-indeed, the overall learning environment-which is at the center of the court's focus in this matter. These are precisely the categories which are implicated by the purported change from a Type I school district to a Type II school district. In addition, the STEM High School may not open its doors. This is hardly inconsequential.
City Council also posits that accepting plaintiff's argument that irreparable harm exists would render any change from a Type I school district to a Type II school district one that involves irreparable harm. This argument on the part of City Council is without merit. It is not the change in and of itself which is problematic; it is the change in this instance. The City's residents were entitled to know how the financial process would work in light of their vote. It is clear to the court that they did not know how the vote would impact the district's financial process. Apparently, City Council was not aware either, as they attempted to pass an ordinance that they did not have the authority to pass in December 2016. In light of all of the foregoing, the court is satisfied that under Crowe , plaintiff has established the requisite showing of irreparable harm, the first criteria necessary for the issuance of an injunction.
B. The Right Underlying Plaintiff's Claim is Settled Law
A plaintiff seeking injunctive relief must show, in order to avoid having the relief it seeks withheld, that the legal right underlying the claim is settled. Crowe , supra , 90 N.J. at 132-34, 447 A .2d 173. In order to analyze this second prong, it is necessary to look to the relevant statute. N.J.S.A. 19:3-6 provides as follows:
Any public question voted upon at an election shall be presented in simple language that can be easily understood by the voter. The printed phrasing of said question on the ballots shall clearly set forth the true purpose of the matter being voted upon. Where the question concerns any amendment to the State Constitution, or any act or statute or other legal titles of any nature, the printed phrasing on the ballots shall include a brief statement interpreting same. In [the] event that in any statute the public question to be voted upon is so stated as not clearly to set forth the true purpose of the matter being voted upon and no provision is made in said statute for presenting the same in simple language or printing upon the ballots a *324 brief statement interpreting the same, there may be added on the ballots to be used in voting upon the question, a brief statement interpreting the same and setting forth the true purpose of the matter being voted upon in addition to the statement of the public question required by the statute itself.
Plaintiff argues that the legal right underlying its claim is well-settled, and sees the issue as follows: whether the municipal public question and interpretive statement were phrased in ways that allowed *1205 the City's residents to understand its true purpose, as required by N.J.S.A. 19:3-6. In arguing at length that the legal right underlying plaintiff's claim is unsettled, City Council argues that the municipal public question and interpretive statement complied with the statute's requirements.
Merits of the parties' respective arguments aside, in sum, the law is clear that N.J.S.A. 19:3-6 requires that the true purpose of the municipal public question be expressed. Thus, the court is satisfied that the right underlying plaintiff's claim is settled.
C. Reasonable Probability of Success on the Merits
For a plaintiff to be granted an injunction, it must show that the instance is not one in which all material facts are controverted. Crowe , supra , 90 N.J. at 132-34, 447 A .2d 173. Therefore, in order "to prevail on an application for temporary relief, a plaintiff must make a preliminary showing of a reasonable probability of ultimate success on the merits." Id. at 133, 447 A .2d 173. City Council argues that "the voters knew that they were voting to move from an appointed school district to an elected school district" and that the interpretive statement was not misleading in that it clearly set forth that voters would be given more control over the school board. City Council is correct in that the voters did indeed know that they were voting to move from an appointed school district to an elected school district.
The heart of the issue, however, is what the voters did not know. Again, N.J.S.A. 19:3-6 provides as follows in pertinent part:
Any public question voted upon at an election shall be presented in simple language that can be easily understood by the voter. The printed phrasing of said question on the ballots shall clearly set forth the true purpose of the matter being voted *325 upon. Where the question concerns any amendment to the State Constitution, or any act or statute or other legal titles of any nature, the printed phrasing on the ballots shall include a brief statement interpreting same.
With respect to interpretive statements, they must be designed in such a way as to "help the voter understand more about the [issue] than disclosed in the [municipal public question] for purposes of aiding the voter in his or her decision." City of N. Wildwood v. N. Wildwood Taxpayers' Ass'n , 338 N.J.Super. 155, 768 A .2d 262 (Law Div. 2000). Interpretive statements which "merely repeat for the most part the language of the question" and which are "one-sided" have been held to be legally deficient. Camden Cty. Bd. of Chosen Freeholders v. Keating , 193 N.J.Super. 100, 110-11, 472 A .2d 178 (Law Div. 1983). The Appellate Division has also previously held that interpretive statements cannot be worded so as to encourage voters to defeat a particular action. Gormley v. Lan , 181 N.J.Super. 7, 436 A .2d 535 (App. Div.), aff'd , 88 N.J. 26, 438 A .2d 519 (1981).
Again, the municipal public question stated as follows: "Shall the Board of Education of the City of Orange Township be changed from a board that is appointed by the Mayor, to a board that is elected by the residents of Orange, effective immediately, with the first school board election to be held during the November 2017 general election[?]" The interpretive statement reads: "Presently the Mayor appoints members to serve on the City's Board of Education. If changed to a board of elected members, the residents will have more control over who serves on the board of education."
City Council advances several arguments under this prong. First, it contends *1206 that the "simple language" requirement has been met. The court agrees; the referendum was written using simple language which the average person could understand. City Council's other arguments, however, are futile. It mischaracterizes plaintiff's argument when it states that plaintiff is arguing that the omission of the words "Type I" and "Type II" render the municipal public question non-compliant with the statute. Similarly, City Council argues that plaintiff unrealistically seeks to have "virtually *326 every consequence" of the change from a Type I school district to a Type II school district included in the referendum. City Council then notes that referendums are "not meant to be exhaustive" and that the detail plaintiff seeks would remove any aspect of simplicity that the relevant statute calls for.
City Council further posits that, under In re Contest of the November 8, 2005 General Election for Office of Mayor of Township of Parsippany-Troy Hills , 192 N.J. 546, 559, 934 A .2d 607 (2007), courts are to liberally construe election laws so as to better effectuate the will of those who vote, and that this court should accordingly hold that the "true purpose" of the municipal public question in this case-the shift from a Type I school district, where Board of Education members are appointed, to a Type II school district, where Board of Education members are elected-is statutorily adequate.
Contrary to City Council's argument, however, plaintiff's position does not hinge on the absence of the words "Type I" or "Type II," and plaintiff does not seek to list "virtually every consequence" of the shift at issue. Rather, plaintiff wishes to have voters understand what goes along with a change from a board member-appointed district to a board member-elected district, and plaintiff gives a few noteworthy examples of consequences beyond the scope of the mere process by which board of education membership is determined. So to the extent City Council is correct that referendums are "not meant to be exhaustive," in this court's measured judgment, there is a significant difference between a referendum that is "exhaustive" and one that provides sufficient information to enable voters to possess a basic working knowledge of the weight their vote carries.
Along these same lines, City Council argues in its brief that a fair reading of the interpretive statement results in serving the basic purpose of "helping the voter understand more about the [issue] than disclosed in the public question." City of N. Wildwood , supra , 338 N.J.Super, at 165, 768 A .2d 262. This argument is unavailing. Whether or not the interpretive statement was required *327 to be present on the ballot in this case is immaterial. It was on the ballot, and it was not helpful. Nowhere in the interpretive statement is there any mention of the scope or consequences tied to one's vote on the municipal public question. Even the most liberal reading of the interpretive statement would not yield an awareness, let alone an understanding, of the concerns plaintiff has raised.
The City, in its opposition papers, notes that municipal public questions should "educate the public about its impact on the education system." Without explaining how, the City argues that the municipal public question "appears to comply with the requirements [of] N.J.S.A. 19:3-6." The City goes no further, as it only cites to Board of Education of the City of Hackensack v. City of Hackensack , 63 N.J.Super. 560, 165 A .2d 33 (App. Div. 1960), which repeats the wording of N.J.S.A. 19:3-6, and points out that courts are charged with determining whether municipal public questions and interpretive statements comport with the law.
Dwayne D. Warren, Mayor of the City of Orange Township, stated in his February *1207 24, 2017, certification that "it does not appear that any legal guidance was considered in the drafting of the subject documents before being submitted to the voters." The City concedes the same, noting that "the full consequences of the vote on this topic [were] never contemplated," but it argues in any event that the public has been afforded opportunities to be educated about the vote's impact since the vote has taken place. The City does not describe these opportunities, set forth what they entailed, how well attended they were, or provide certifications as to the residents' satisfaction with them.
In an apparent attempt to justify the lack of detail included in the municipal public question and interpretive statement, the City argues that "the vast majority of the citizenry is not aware of the nuances and complexities of the law" and, as such, "these citizens are less likely to be able to develop a fair appreciation of the consequences of their vote." This argument is also without merit. First of all, knowledge of the law's complexities is by no means a prerequisite for understanding the consequences of one's vote. In *328 no way does this court suggest that the law's nuances had to be outlined in detail to the voters. The general scope and consequences of one's vote can easily be presented to voters in a way that does not even mention the law, and can be done in a manner consistent with the simple language mandate of N.J.S.A. 19:3-6. Finally, the City cannot say that its citizens are "unable to develop a fair appreciation of the consequences of their vote" and in the next breath, as it does, say that "the process should be based upon public information, awareness, and education." One position is entirely inconsistent with the other.
In the court's view, when looking at both the municipal public question and the interpretive statement together, clearly, each is defective. The municipal public question does not reveal anything beyond the fact that the City would be changing from an appointed board of education to an elected board of education. If voters wanted some clarity or further explanation on what changing from an appointed district to an elected district meant, they were disappointed when they read the interpretive statement. The interpretive statement was a regurgitation of the municipal public question, and, as such, is deficient under Camden . Voters were essentially told what everyone already knows: with an election comes more control. The real question is what that control is over. This is precisely what was withheld from the voters on November 8, 2016.
For all of these reasons, it is the court's determination that the true purpose of this municipal public question was not set forth in adequate detail so as to allow voters in the City to be sufficiently informed. In addition, the interpretive statement failed to aid the voter in understanding the flawed municipal public question. Therefore, plaintiff has succeeded in establishing that not all material facts are controverted, and, as such, it has shown that it has a likelihood of prevailing on the merits.
D. Relative Hardship Considerations
The final factor courts are charged with considering when presented with a request for injunctive relief is the relative *329 hardship each party would face if the relief sought is granted or denied. Crowe , supra , 90 N.J. at 132-34, 447 A .2d 173. The parties in this case refer to this factor as the "balancing of equities" analysis. If the court were to deny the injunction, plaintiff's hardship would be severe. Conversely, if the court were to grant the injunction, defendants' hardships would be slight.
The Rutgers University Constitutional Law Clinic's brief pertains mainly to this *1208 portion of the injunctive relief analysis, as acknowledged in its brief on page 4. The Clinic is to be commended on a comprehensive, well-written submission to the court.
The argument from the Clinic is straightforward: the voters have spoken, and it is the responsibility of this court to honor the results of the November 8, 2016, election. The Clinic argues that invalidating the referendum would "undercut the will of Orange citizens" as well as "impermissibly burden their right to vote by requiring the citizens to vote again via referendum." The Clinic cautions against what it argues would amount to a diminishment of the right to vote, which is "sacred." Sharrock v. Borough of Keansburg , 15 N.J.Super. 11, 18, 83 A .2d 11 (App. Div. 1951).
To grant plaintiff's application, the Clinic argues, would burden the City's voters, "would take away the citizens' voice" on this matter, and would "undermine confidence in the democratic process." The Clinic also argues that judicial intervention is only appropriate if an irregularity in the electoral process has "interfered with 'the free expression of the popular will' and has thus influenced the result of the election." Wene v. Meyner , 13 N.J. 185, 98 A .2d 573 (1953) (citation omitted).
The court is not persuaded by the Clinic's arguments. Consistent with this opinion, the will of the City's citizens will not be undercut. Rather, the court's judgment and opinion is provided in order to ensure that the will of these citizens is expressed accurately. That is to say, the true will of the City's citizens can only be known if the citizens were told, as they are required to be so told under N.J.S.A. 19:3-6, of the true purpose of the municipal public question and what their vote on that question really means.
*330 To assume that just because a vote was cast that the vote reflected the will of those voters, especially in light of the limited amount of information presented to the City's voters in this case, would be imprudent.
Therefore, the injunctive relief herein does not "undercut" the will of the voters. Rather, in accordance with the right to vote indeed being sacred, it merely seeks to confirm the voters' will in a way that is fair to all parties involved. Fairness is best ensured by transparency, and the referendum in question was not transparent as written. Moreover, the notion that voters will be burdened by a revised referendum being placed on the November 2017 ballot is far-fetched, at best. It is one additional consideration to be voted upon in an annual election. With respect to the appropriateness of judicial intervention, the court is satisfied that the lack of information in the referendum interfered with a knowledgeable expression of popular will so as to warrant judicial action under Wene .
Meanwhile, City Council attempts to paint the relief plaintiff is requesting as "extraordinary" and, similar to the Clinic, suggests that "integrity of the electoral system is at stake." Neither is true. Plaintiff's arguments, and the court's approval of them, are in no way an affront to democratic norms. Plaintiff is simply seeking to make certain that any change from a Type I school district to a Type II school district is done properly, with strict adherence to statutory parameters, and with careful attention paid to ensure compliance with the appropriate legal process. Plaintiff is not seeking to permanently thwart the will of the City's residents. It simply seeks to rectify what was a legally deficient referendum. Once the necessary measures are implemented to bring the referendum within legal compliance, the obligation to inform the citizens of the consequences of their vote will be satisfied.
With respect to the integrity of the electoral system, no one can argue that the citizens of the City of Orange Township *1209 voted overwhelmingly to change from an appointed district to an elected district on the information which was made available to them when *331 they went to the polls on November 8, 2016. The point here is that these same citizens should have been exposed to more information prior to voting. Nothing can be more integral to the electoral system, especially when that system directly bears upon the well-being of students, than an informed vote.
Conclusion
For all of the foregoing reasons and on the basis of the authority cited herein, plaintiff's application for injunctive relief is granted and judgment for the plaintiff is entered.