Plaintiffs' counsel is to submit a form of judgment.

CAMDEN COUNTY BOARD OF CHOSEN FREEHOLDERS, PLAINTIFF, v. CAMDEN COUNTY CLERK, MICHAEL S. KEATING, DEFENDANT.

Superior Court of New Jersey
Law Division Burlington County

Decided October 5, 1983.

*Steven D. Weinstein* for plaintiff.

*Eugene J. Sullivan* for Attorney General of New Jersey, Irwin I. Kimmelman.

*David E. Ferguson* for defendant, Michael S. Keating, County Clerk (*Ferguson & Adinolfi,* attorneys).

HAINES, A.J.S.C.

On June 28, 1983, the Chief Justice of the New Jersey Supreme Court issued a directive establishing uniform budget procedures to be undertaken at the county level by Assignment Judges and Trial Court Administrators. The Camden County Board of Chosen Freeholders objected to the directive. It adopted a resolution so stating, which also requested defendant, Michael S. Keating, the Camden County Clerk, to place upon the ballot at the November 1983 general election the following non-binding referendum and interpretative statement:

## COUNTY QUESTION NO. 1

Shall the Camden County Board of Chosen Freeholders be bound by the budget directive of the New Jersey Supreme Court in its attempt to expand the involvement of the judiciary in areas of budgeting and fiscal responsibility previously reserved for the offices of County Clerk, Sheriff and Surrogate without any accountability of the judiciary to the taxpayers of Camden County?

## INTERPRETIVE STATEMENT

The approval of this non-binding referendum would demonstrate the voters' support of expanded judicial involvement in the county's budgeting process and would remove the independence and accountability to the taxpayers of the County Clerk, Sheriff and Surrogate.

The resolution was adopted on September 20, 1983, 12 days less than the deadline required for submission of such referenda to the Clerk, who therefore rejected the request.

This suit in lieu of prerogative writs was promptly instituted. It requests an order directing the Clerk to place the question and interpretative statement on the ballot. The County Clerk advises that he can accommodate the request provided he receives an order to do so not later than October 10, 1983. The Attorney General appears on his own behalf in opposition to the County's request.

## A. THE DIRECTIVE

The directive is entitled "Budget Directive on Trial Court Fiscal Responsibility." Its purpose is stated as follows:

In order to achieve efficiency and economy for cost-effective operation of the trial courts of New Jersey, to discharge the Judiciary's duty of accountability for the expenditure of funds at the trial court level, and to identify costs (1) for comparisons among counties and (2) for possible assumption, this directive establishes the basis for the development and maintenance of a uniform county judicial budget.

It notes that the Committee on Efficiency in the Operation of the Courts of New Jersey has stated that budgets for the judiciary are "so fragmented that they fail to provide adequate management information for effective control of the resources employed by the trial court system."

Execution of the directive as well as budget preparation and management is made the responsibility of the Assignment Judge of each county, assisted by the Trial Court Administrator. The scope of the judicial budget, its organization and internal review procedures are established. It provides that "[t]he judiciary shall be fully accountable and responsible for the monies appropriated to it." Significantly, for present purposes, the directive

is not addressed to county governing bodies; it requires no action of any kind from them.

■ The power to issue the directive and to require execution of the procedures which it commands is beyond question. The New Jersey Constitution (1947), Art. 6, § 2, ¶ 3, provides that "[t]he Supreme Court shall make rules governing the administration of all courts in the State . . . ." Art. 6, § 7, ¶ 1, provides that "[t]he Chief Justice of the Supreme Court shall be the administrative head of all the courts in the State." *R.* 1:33–3 was adopted pursuant to this constitutional power. It provides that Assignment Judges' duties shall include "[t]he representation of the judicial branch of government in the county in all matters pertaining to the budgets, personnel and facilities of the trial courts in the county."

■ The constitutional provisions have been interpreted as giving the Supreme Court "plenary authority with respect to all matters touching the administration of the court system of New Jersey. Upon it also rests the concomitant responsibility to see that the public interest is fully served by the proper functioning of this vital branch of our government." *Passaic Co. Probation Officers' Assoc. v. Passaic,* 73 *N.J.* 247, 252–253 (1977). As a consequence, the Court is empowered to compel the appropriation of funds and the employment of personnel necessary for the efficient administration of justice. *In Re Court Reorganization Plan of Hudson Co.,* 161 *N.J.Super.* 483, 491 (App.Div.1978), *aff'd,* 78 *N.J.* 498 (1979).

Camden County does not dispute the Chief Justice's power to issue the budget directive, although its resolution states that it "deems the . . . removal of its budgetary responsibilities to be without statutory authority." It presses, however, for an order requiring its question and statement to be placed upon the ballot.

## B. STATUTORY AUTHORITY FOR THE REFERENDUM

The County's request is based upon *N.J.S.A.* 19:37–1 which provides:

> When the governing body of any municipality or of any county desires to ascertain the sentiment of the legal voters of the municipality or county upon any question or policy pertaining to the government or internal affairs thereof, and there is no other statute by which the sentiment can be ascertained by the submission of such question to a vote of the electors in the municipality or county at any election to be held therein, the governing body may adopt at any regular meeting an ordinance or a resolution requesting the clerk of the county to print upon the official ballots to be used at the next ensuing general election a certain proposition to be formulated and expressed in the ordinance or resolution in concise form. Such request shall be filed with the clerk of the county not later than 60 days previous to the election.

### (1) *The Scope of the Statute*

■ The statute restricts non-binding referenda to "any question or policy pertaining to the government or internal affairs" of the county. This language limits questions which may be placed upon the ballot to those involving matters over which the Board of Freeholders has jurisdiction. It has been so interpreted in *Botkin v. Westwood,* 52 *N.J.Super.* 416 (App.Div.1958), *aff'd per curiam,* 28 *N.J.* 218 (1958):

> We are convinced that the quoted section can only be interpreted to mean a question of policy relating to matters in that sphere of government committed by law to and within or related to the powers of the body permitted to call for the referendum. In other words, sentiment can only be asked for with respect to matters concerning or as to which the particular body has the power to act. Any broader interpretation would open the doors without any restriction and would lead to nothing but confusion and turmoil. It would go far beyond the obvious purpose of the device, *i.e.,* to assist the body calling for the vote in determining the course of action it should pursue on a problem or issue before it and within its jurisdiction. [at 432–433]

*Gamrin v. Englewood,* 76 *N.J.Super.* 555 (Law Div.1962), is to the same effect. *See also, Santoro v. So. Plainfield,* 57 *N.J.Super.* 498 (App.Div.1959). This interpretation is entirely logical. The Legislature cannot have intended to authorize hollow referenda *i.e.,* questions for voter consideration involving undertakings which counties have no power to control.

■ Counties have only the powers delegated to them by the Legislature. *Clark v. Degnan,* 83 *N.J.* 393 (1980). No delegation of power over judicial budgets has been made to them. Any attempted delegation of such power would violate Art. 3, ¶ 1 of our Constitution which provides:

The powers of the government shall be divided among three distinct branches, the legislative, executive and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

Thus, the judicial branch of government, like the legislative and executive branches, must be independent. County control over judicial budgets would permit county control, whether exercised in a legislative or executive capacity, over all phases of administration. It would deny judicial independence.

■ The budget directive is an independent judicial action affecting only matters within the judicial sphere. It does not require any action by the counties.[1] It does not deal with county procedures, does not require counties to approve any judicial budget or to appropriate any money or to impose any taxes. It is true that it changes past arrangements under which counties were permitted some control over judicial budgets and judicial monies. These arrangements were established long ago, well before the complexities of the judicial system, resulting from relentless social pressures, made efficient administration a necessary and pressing concern of the public and the courts. County control over budget matters, developed as the result of a *laissez-faire* judicial approach, is no longer acceptable if demands for judicial responsibility are to be recognized. The budget directive merely asserts power always present but never fully exercised. Past permissive practices did not create any

---

[1] Its only reference to county participation relates to the use of unencumbered funds. As to these, it provides: "If in November the Judiciary and the County agree that unencumbered funds remain in the courts or court-related accounts that will not be needed for the balance of the year, the County will advise the Assignment Judge should the need exist to transfer any portion of the estimated excess to other County departments." This does not require County action but permits its participation in this area of financial concern.

permanent county jurisdiction over budget matters. They were subject to change at any time. Consequently, matters covered by the directive, a subject of county power only by judicial allowance, are not matters "pertaining to the government or internal affairs" of the counties. Any other conclusion would permit county intrusion into judicial affairs contrary to the constitutional insistence upon the separation of the powers of the three branches of government.

The County of Camden argues that the directive concerns county "internal affairs", namely, county finances, since judicial budgets require counties to raise monies through exercise of their power of taxation. Certainly it is true that judicial budgets affect county tax and financial arrangements. However, these arrangements are not implicated in the budget directive which has nothing to do with the internal affairs of counties. It deals with *judicial procedures* concerning judicial budgets. It does not deal with county appropriations. It does not direct the exercise of county taxing power. It places no added burden upon the counties. It is internal to the judiciary and therefore beyond the reach of the referenda statute. The same tax argument was made in *Botkin v. Westwood, supra.* There, the Appellate Division held that a municipal governing body could not submit to the voters an *N.J.S.A.* 19:37–1 question which asked whether its school district should be deconsolidated. This was not a power delegated to municipalities. The court said: "The fact that the borough is the collecting agent for school district taxes does not give the slightest basis for intrusion in school affairs." 52 *N.J.Super.* at 426. Counties, as taxing agencies required to raise monies for the judicial system, are in no different position.

## C. THE SIXTY DAYS

The statute provides that a county's referendum "*shall be filed* with the Clerk of the County not later than 60 days previous to the election." [emphasis supplied] Camden County's request was filed 48 days before the election. The County,

although it presents no reason justifying its tardy action, argues that the court has authority to relax the time requirement and should do so here.

Normally, use of the word "shall" in a statute must be construed as a mandatory direction. *Union Terminal Cold Storage Co. v. Spence*, 17 *N.J.* 162 (1955); *Bell v. Western Emp. Ins. Co.*, 173 *N.J.Super.* 60 (App.Div.1980). The power of the court to treat the direction as permissive and not mandatory depends on whether a permissive construction is necessary to execute the clear intent of the Legislature. *Harvey v. Board of Chosen Freeholders of Essex County*, 30 *N.J.* 381 (1959); *Bell v. Western Emp. Ins. Co., supra.* Nothing in the language of *N.J.S.A.* 19:37–1 provides a basis for converting "shall" to "may." On the contrary, the statutory language is clear. It requires a 60 day filing. Its plain meaning should prevail. *Sheeran v. Nationwide Mutual Ins. Co.*, 80 *N.J.* 548 (1979). A permissive construction would defeat the legislative mandate. A like conclusion regarding the same statute was reached in *Eatontown v. Danskin*, 121 *N.J.Super.* 68 (Law Div.1972). The statute is not directed to filings with the Camden County Clerk alone; it is directed to filings with all County Clerks. The fact that the Camden Clerk needs only a short time to prepare the ballot does not mean that other clerks are in the same position.

D. THE WORDING OF THE QUESTION; THE INTERPRE-
 TIVE STATEMENT

The County's proposed question is clearly beyond its power to submit. It asks, in part: "Shall the Camden County Board of Chosen Freeholders be bound by the budget directive...?" That directive, as shown above, is a lawful exercise of the Chief Justice's power to administer the courts. It delegates authority to Assignment Judges, authority which counties must recognize as a matter of law. The question, however, suggests that Camden County need not do so. This is not correct. No county governing body has the right to ignore

the law. None has delegated power which places it above the law. Consequently, the County's question does not deal with any of its "internal affairs" and is not authorized by *N.J.S.A.* 19:37–1.

 Furthermore, the question is not factually correct and is therefore misleading. It is required to be the opposite. *Hackensack Bd. of Educ. v. Hackensack*, 63 *N.J.Super.* 560, 571 (App.Div.1960). It suggests that the judiciary has no accountability to the taxpayers of the County. In fact, the budget directive expressly states that one of its purposes is "to discharge the Judiciary's duty of accountability for the expenditure of funds at the trial court level." Financial accountability does not rest upon the election process alone. Courts are very sensitive to public relations and are insistent upon being accountable. Full disclosure of the judiciary's financial circumstances is standard practice. Its budget is negotiated with county freeholder boards and therefore subjected to scrutiny, criticism and publicity. It is published as part of every county's budget and subjected to county budget hearing procedures. Press coverage of the judiciary's financial undertakings is constant and encouraged. No history of profligate judicial expenditures has been shown.

 The interpretive statement is also defective. It is authorized by *N.J.S.A.* 19:3–6 which provides:

> Where the question concerns any amendment to State Constitutions, or any act or statute or other legal titles of any nature, the printed phrasing on the ballot shall include a brief statement interpreting same.

The statement is an argument, not an explanation; it merely repeats for the most part the language of the question. It is one-sided in its failure to mention any positive aspects of the directive. It violates the rules laid down in *Gormley v. Lan*, 181 *N.J.Super.* 7 (App.Div.1981), *aff'd*, 88 *N.J.* 26 (1981). In that case, the court held that an interpretive statement could not be so worded as to encourage voters to defeat a particular action. The court said:

The spirit of the statute, however, is simple and clear: the brief statement is to be added to help the voter understand more about the amendment than the public question tells him for the purpose of aiding him in his decision ... [at 37]
There is another requirement that the brief statement must satisfy. It must be fair. Although there is no statutory provision to that effect, courts have so ruled in similar contexts [citations omitted] and we have no hesitancy in doing the same here. [at 38]

. . . .

The interpretive statement itself, especially when considered in light of its history, is clearly unbalanced. It reflects only the adverse consequences of an affirmative vote. While substantially accurate, it is the accuracy of an advocate. In failing even to mention any reason supporting the amendment, it is biased. [at 39]

It would be permissible, as in *Gormley,* to remand the matter so that the language of the question and the statement could be revised. Here, however, any revision would necessarily result in a new question. The question before the court, stripped to its essentials, simply asks whether the County is to be bound by the budget directive. That question is improper; revision cannot correct the impropriety.

## CONCLUSION

The order to show cause must be discharged. The question presented is beyond the power of the County to submit, was filed with the County Clerk too late, and is so worded that it cannot be revised.