NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0908-13T2

ADAM M. FINKEL, CATHERINE M.
KAVANAUGH and JAMES J. WULF,

    Plaintiffs-Appellants,

v.

TOWNSHIP COMMITTEE OF THE
TOWNSHIP OF HOPEWELL, and
PAULA SOLLAMI-COVELLO, in her
capacity as CLERK OF THE
COUNTY OF MERCER,

    Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| December 30, 2013 |
| APPELLATE DIVISION |

Argued December 17, 2013 – Decided December 30, 2013

Before Judges Messano, Sabatino, and Hayden.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2115-13.

Adam M. Finkel, appellant, argued the cause pro se.

Catherine M. Kavanaugh, appellant pro se, and James J. Wulf, appellant pro se, join in the brief of Adam M. Finkel, appellant pro se.

Steven P. Goodell argued the cause for respondent Township Committee of the Township of Hopewell (Herbert, Van Ness, Cayci & Goodell, attorneys; Mr. Goodell and Rachel U. Doobrajh, of counsel and on the brief).

Joseph P. Blaney, Assistant County Counsel, argued the cause for respondent Paula Sollami-Covello (Arthur R. Sypek, Jr., Mercer County Counsel, attorney; Mr. Blaney and Mr. Sypek, on the brief).

Robert T. Lougy, Assistant Attorney General, argued the cause for amicus curiae Attorney General of the State of New Jersey (John J. Hoffman, Acting Attorney General, attorney; George N. Cohen, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SABATINO, J.A.D.

This appeal involves the ambiguous interrelationship of several referendum provisions within the New Jersey election statutes. Specifically, we consider whether a proposed question on a non-binding local referendum may be placed on a ballot when the municipality has failed to submit the proposal to the county clerk within 81 days before an election as required by N.J.S.A. 19:37-1, but has submitted the proposal within the 65-day deadline separately set forth in N.J.S.A. 19:37-2. As part of our analysis, we also consider whether a governing body's non-compliance with the 81-day deadline in N.J.S.A. 19:37-1 conflicts with the local citizens' interests, as protected by N.J.S.A. 19:37-1.1, in having sufficient time to react to a referendum that has been proposed to be placed on the ballot.

For the reasons that follow, we conclude that a governing body's ballot submission must meet the separate deadlines of

2                                                          A-0908-13T2

both N.J.S.A. 19:37-1 and N.J.S.A. 19:37-2.  Because the 81-day deadline of N.J.S.A. 19:37-1 was not met here, we declare the referendum at issue untimely and thus invalid.  Consequently, we reverse the trial court's order holding to the contrary. Because the election has occurred and the governing body has already acted on the policy question posed by the referendum, we issue no other relief beyond our declaratory ruling.

I.

The case arises out of the Law Division's order denying plaintiffs' request to declare invalid a non-binding referendum question placed on the Hopewell Township ballot for the November 5, 2013 General Election.  The referendum sought the input of Township voters on restricting the speed limit of a section of Route 579 in the Township in front of the Bear Tavern Elementary School.  That portion of Route 579, also known as Bear Tavern Road, is currently owned and maintained by Mercer County.

Plaintiffs Adam M. Finkel, Catherine M. Kavanaugh, and James J. Wulf are Township residents.  They have advocated for the Township to acquire that section of Route 579 from the County in order to reduce the speed limit by the elementary school.[1]

---

[1] Without getting into all of the details here, evidently the County took the position that it would not agree to a further

(continued)

On August 27, 2013, the Township's governing body submitted a proposed non-binding referendum to the Mercer County Clerk for inclusion on the General Election ballot for November 5, 2013. The purpose of the referendum was to gauge local voter sentiment about the potential acquisition of the roadway segment from the County.

The referendum question, Resolution #13-248, read as follows:

> Shall the Township of Hopewell take over ownership, including maintenance, of a one and one-half mile section of Bear Tavern Road (County Route 579) between Jacobs Creek Road and Washington Crossing Road (County Route 546), which is currently owned and maintained by the County of Mercer, for the purpose of lowering the speed limit from 30 mph to 25 mph, within the one-quarter mile school zone in front of Bear Tavern Elementary School during the approximately 180 day school year for 12 hours on school days for an estimated average yearly cost for the first 15 years of $67,000 per year?

The accompanying interpretive statement[2] read as follows:

---

(continued)
reduction of the speed limit unless the Township purchased and agreed to maintain the pertinent stretch of Route 579.

[2] For consistency, we shall use the term "interpretive statement," although case law has previously used both "interpretive statement" and "interpretative statement" interchangeably. See, e.g., Bd. of Chosen Freeholders v. State, 159 N.J. 565, 582 (1999) (using "interpretative statement"); State v. Biegenwald, 126 N.J. 1, 95 (1991) (same). But see Cambria v. Soaries, 169 N.J. 1 (2000) (using "interpretive
(continued)

For 50 years, the speed limit on Bear Tavern Road (County Route 579) in front of Bear Tavern Elementary School was 50 mph. In 2012, at the request of Hopewell Township, the County of Mercer lowered the speed limit between Jacobs Creek Road and Washington Crossing Road (County Route 546) to 45 mph and, for the one-quarter mile in front of Bear Tavern Elementary School, to 30 mph.

In 2013, Mercer County declined the Township's request to lower the speed limit in the school zone to 25 mph, but proposed the following: 1) the County would reconsider lowering the speed limit in the school zone after one year following the Jacobs Creek Bridge being re-opened to traffic, which is anticipated to occur in 2014; 2) the County would upgrade the current school zone warning flashers with driver feedback signs; 3) the County would enable local officials to operate these devices to better coincide with the school schedule.

If Hopewell Township takes over ownership of the roadway, Mercer County would no longer be responsible for any further costs associated with the roadway, including replacement of the road surface every 15 years and maintenance, such as road repair, signs and winter salting and plowing. Either way, Mercer County would retain ownership of Jacobs Creek Bridge and the intersection of Washington Crossing Road (County Route 546).

A "yes" vote would tell the Township to take over the roadway.

---

(continued)
statement"); State v. Trump Hotels & Casino Resorts, 160 N.J. 505, 546 (1999) (same).

A-0908-13T2

> A "no" vote would tell the Township do not take over the roadway.

After receiving the Township's submission, the County Clerk was advised of plaintiffs' objection to the inclusion of the referendum question on the November 2013 General Election ballot. Nevertheless, the County Clerk decided under the circumstances to proceed with printing those ballots, including the referendum and interpretive statement.

Plaintiffs maintained that the governing body's submission of the referendum question to the Mercer County Clerk was untimely under N.J.S.A. 19:37-1, as it was submitted only 70 days before the election. Moreover, they contended that the interpretive statement accompanying the referendum question was misleading, and that the statement was unfairly worded to sway voters to oppose it.

N.J.S.A. 19:37-1, which has been amended several times since its original enactment, currently reads:

> When the governing body of any municipality or of any county desires to ascertain the sentiment of the legal voters of the municipality or county upon any question or policy pertaining to the government or internal affairs thereof, and there is no other statute by which the sentiment can be ascertained by the submission of such question to a vote of the electors in the municipality or county at any election to be held therein, the governing body may adopt at any regular meeting an ordinance or a resolution requesting the clerk of the

A-0908-13T2

> county to print upon the official ballots to be used at the next ensuing general election a certain proposition to be formulated and expressed in the ordinance or resolution in concise form. <u>Such request shall be filed with the clerk of the county not later than 81 days previous to the election</u>.
>
> [<u>N.J.S.A.</u> 19:37-1 (emphasis added).]

It is undisputed that the Township's submission of the ballot question to the County Clerk occurred only 70 days before the election and therefore did not meet this specified 81-day deadline.

Defendants, the Township Committee and the Mercer County Clerk, contended that the failure to adhere to the 81-day deadline was inconsequential here because a certified copy of the resolution was submitted to the County Clerk within the 65-day time frame prescribed by <u>N.J.S.A.</u> 19:37-2. That statutory provision, which likewise has been amended multiple times (albeit not always at the same time as <u>N.J.S.A.</u> 19:37-1), presently reads as follows:

> If a copy of the ordinance or resolution certified by the clerk or secretary of the governing body of any such municipality or county is <u>delivered to the county clerk not less than 65 days before any such general election</u>, he shall cause it to be printed on each sample ballot and official ballot to be printed for or used in such municipality or county, as the case may be, at the next ensuing general election.
>
> [<u>N.J.S.A.</u> 19:37-2 (emphasis added).]

A-0908-13T2

Defendants maintained that compliance with N.J.S.A. 19:37-2 obviated any non-compliance with N.J.S.A. 19:37-1. In response, plaintiffs asserted that such an interpretation rendered the 81-day deadline in N.J.S.A. 19:37-1 meaningless.

On October 2, 2013, plaintiffs, then represented by counsel,[3] filed a complaint and order to show cause in the trial court against defendants, and moved for a preliminary injunction. By that point, however, the ballots had already been printed.

After hearing the parties' arguments, the trial judge issued an order and written opinion on October 21, 2013 denying plaintiffs' request for injunctive relief. The judge determined that plaintiffs had failed to satisfy the criteria for injunctive relief under Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982). The judge found that (1) plaintiffs had failed to show that they would suffer irreparable harm, particularly given the non-binding nature of the referendum, (2) they would not likely succeed on the merits of their case, and (3) the Township bore a disproportionately greater burden of hardship should the injunction be granted, as, among other things, it would deprive

---

[3] Plaintiffs are self-represented on appeal. None of them is an attorney, although we note that one of them is a member of a law school faculty.

Township Committee members of the "input and views of a broader range of Township residents."

On the point of plaintiffs' probability of success, the judge concluded that the Township's non-compliance with the 81-day submission deadline in N.J.S.A. 19:37-1 appeared to be of no moment, because the Township had complied with the separate 65-day deadline in N.J.S.A. 19:37-2. The judge found that "[u]nder these circumstances . . . the County Clerk appropriately determined to allow the question to remain on the ballot. This is consistent with the case law most recently reaffirmed by the New Jersey Supreme Court in [N.J.] Democratic Party v. Samson, 175 N.J. 178 (2002), that election laws are to be liberally construed to allow New Jersey [voters] to exercise their franchise and make a choice." The judge added that he "decline[d] to invalidate the ability of Hopewell Township voters to express their views on this important public question solely on technical grounds, where the election officials have determined that the issue should be placed on the ballot."

The judge also briefly addressed the propriety of the interpretive statement. He concluded that "both the [ballot] question and statement, taken together, provide Hopewell Township voters with the essential background and facts to make an informed decision." The judge added that the chosen wording

was "consistent with the requirements under <u>Gormley v. Lan</u>, 88 <u>N.J.</u> 26 (1981), in that the interpretive statement gets to the heart of the matter as understood by those who are knowledgeable about it." Hence, the judge concluded that plaintiffs had not shown a likelihood of success on the merits of their claims, and he rejected their request for a preliminary injunction.

Plaintiffs promptly filed an emergent application for relief with this court. Recognizing that ballots for the election had already been printed, plaintiffs did not seek that they be changed or reprinted at that late hour. They instead confined their prayer for emergent relief to a request that the votes cast on the question not be tabulated.[4] Defendants opposed the emergent application, urging that the court not interfere with an ongoing election process. At our request, the Attorney General was invited to participate in the emergent application, but he declined.

Upon considering the emergent application, a two-judge panel of this court issued an order on October 29, 2013, seven days before the election, which denied plaintiffs' request for injunctive relief. We concluded that plaintiffs had failed to show that allowing the ballots to be counted would cause

---

[4] Plaintiffs specifically limited their emergent arguments to the timeliness of the referendum, and did not seek review at that time of the wording of the interpretive statement.

irreparable harm.[5]  We cautioned, however, that our decision to allow the vote and the count to go forward would be "subject to this court's ultimate plenary decision on the legal validity of the referendum procedure."

Our emergent order did indicate, however, that plaintiffs had preliminarily shown a probability of success on the merits of their argument that the referendum was invalid because of the Township's failure to comply with the 81-day submission deadline of N.J.S.A. 19:37-1.  We amplified that preliminary finding with a tentative analysis of the text and legislative origins of the statutory provisions, explaining why we were inclined to disagree with the trial judge's analysis.  Given the limited and expedited nature of the parties' emergent submissions, we reserved a final determination on the issues of statutory interpretation for further briefing and plenary consideration after the election.  We also specifically requested the Attorney General to participate in the post-election briefing, in recognition of his roles as the sole legal advisor to State government, N.J.S.A. 52:17A-4(e), and in the enforcement of New Jersey election laws.  We established a briefing schedule and a peremptory oral argument date of December 17.

---

[5] We also questioned whether, as a practical matter, it was even feasible to prevent the ballots cast at voting machines from being tallied automatically.

Plaintiffs did not seek emergent relief from the Supreme Court. Hence, the election went forward on November 5, with the Township voters casting ballots on the referendum and guided by the accompanying interpretive statement. According to the official tally, 4,237 residents of the Township voted "no" on the referendum question, while 1,534 "yes" voters supported it.

Several weeks later, plaintiffs filed a motion with this court advising that the Township Committee imminently expected to decide at its next meeting on November 25 whether the Township ought to take over the ownership and maintenance of the subject portion of Route 579.[6] Plaintiffs requested us to enjoin the Township Committee from deciding the substance of the matter until this appeal was decided. By that point, the Attorney General had filed an amicus letter-brief with this court, requesting that we dismiss plaintiffs' appeal as moot because the election was over.

In a three-judge order issued on November 25, 2013, we denied plaintiffs' application to restrain the Township Committee from acting. Our order recited in relevant part:

---

[6] At oral argument before us, counsel for the Township and the County acknowledged that, as of November 25, there was no specific deadline looming on the road acquisition issue, or any pending post-election change in composition of the governing body, which made it necessary or urgent for the Township to act on the roadway matter before the oral argument in this appeal scheduled for December 17.

A-0908-13T2

> Plaintiff[s'] application for injunctive relief against the Township is denied. Regardless of the referendum's validity or invalidity under the applicable statutes, it was non-binding in nature, being only "an expression of sentiment by the voters, to be followed or disregarded by the governing body in its discretion." N.J.S.A. 19:37-4. Consequently, we have no reason to interfere with the governing body's apparent plan to proceed with decision-making on the subject matter of the referendum, despite the pendency of this appeal.

Our order further instructed the parties to be prepared to address, in addition to the merits of the statutory issues, whether the issues of statutory construction were "'capable of repetition, yet evading review,'" in light of the short timelines set forth in N.J.S.A. 19:37-1 and -2. Roe v. Wade, 410 U.S. 113, 125, 93 S. Ct. 705, 713, 35 L. Ed. 2d 147, 161 (1973) (quoting S. Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515, 31 S. Ct. 279, 283, 55 L. Ed. 310, 316 (1911)). Again, plaintiffs did not seek emergent relief from the Supreme Court.

At the subsequent Township Committee meeting on the evening of November 25,[7] four of the five Committee members voted against the Township taking ownership of the subject portion of Route 579 from Mercer County. This decision was consistent with the

---

[7] We presume that the parties and counsel had received a copy of our order issued earlier that day.

apparent will of the majority of the voters who had cast ballots on the non-binding referendum.

The Township and the County Clerk now argue that because the election is over and the Township's governing body had rejected the roadway acquisition, there is no reason for this court to consider this matter any further. Defendants join in the Attorney General's request that we dismiss the appeal as moot, and that we leave unresolved the issues of statutory interpretation presented under N.J.S.A. 19:37-1 and -2.

Plaintiffs, however, urge that we reject the claims of mootness and reach the merits of the statutory issues of timeliness. They also now seek review of the trial court's decision sustaining the wording of the interpretive statement. Plaintiffs request that we declare the referendum invalid. They also ask that we go further and order that the matter be presented again to the Township voters in the next election with a differently-worded referendum and interpretive statement. Finally, plaintiffs seek recovery from defendants of the counsel fees they expended in the trial court.

II.

A.

We first address the question of mootness. Despite the fact that the election is over and the governing body has

rejected the roadway acquisition, we decline the invitation to dismiss the appeal for several reasons.

The courts of our State are not bound by the strict "case or controversy" requirement that Article III, Section 2, of the United States Constitution imposes on federal courts. See Salorio v. Glaser, 82 N.J. 482, 490-91, appeal dismissed and cert. den., 449 U.S. 804, 101 S. Ct. 49, 66 L. Ed. 2d 7 (1980); Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107-08 (1971).  Even so, our courts often decline to review legal questions that have become academic prior to judicial scrutiny, out of reluctance to render a decision in the abstract on such moot issues and a related desire to conserve judicial resources.  See, e.g., Oxfeld v. N.J. State Bd. of Educ., 68 N.J. 301, 303-04 (1975); Sente v. Mayor & Mun. Council of Clifton, 66 N.J. 204, 205 (1974); Handabaka v. Div. of Consumer Affairs, 167 N.J. Super. 12, 14 (App. Div. 1979).

From time to time our courts have exercised the discretion to decide an otherwise moot case that presents issues of significant public importance, or which stem from a controversy "capable of repetition, yet evading review" because of the short duration of any single plaintiff's interest.  In re Conroy, 190 N.J. Super. 453, 459 (App. Div. 1983) (citations omitted), rev'd on other grounds, 98 N.J. 321 (1985); see also Roe v. Wade,

supra, 410 U.S. at 125, 93 S. Ct. at 713, 35 L. Ed. 2d at 161. We will typically do so when the matter evading review poses a significant public question or affects a significant public interest.  See, e.g., Guttenberg Sav. & Loan Ass'n v. Rivera, 85 N.J. 617, 622-23 (1981); Dunellen Bd. of Educ. v. Dunellen Educ. Ass'n, 64 N.J. 17, 22 (1973); John F. Kennedy Mem'l Hosp. v. Heston, 58 N.J. 576, 579 (1971); E. Brunswick Twp. Educ. Bd. v. E. Brunswick Twp. Council, 48 N.J. 94, 109 (1966).

The appeal before us presents a significant public question and affects a matter of clear public interest.  Objectively and realistically considered, the matter is also very capable of repetition but evading review.  The public question involves the proper interpretation of the election laws that have been enacted by our Legislature.  Those election laws affect all 21 counties and the more than 500 municipalities in New Jersey, as well as the millions of voters who reside in our State. Although the referenda presented to the voters under the provisions in N.J.S.A. 19:37-1 and -2 are non-binding, such propositions nonetheless involve electoral processes that are at the core of our democracy.  We do not minimize the issues and interests here as mere technical niceties that are purely of academic concern to political junkies and political scientists.

A-0908-13T2

Instead, the issues involve the important fundamentals of carrying out a proper election.

The specific questions posed here, concerning how the deadlines set forth in N.J.S.A. 19:37-1 and -2 are to be sensibly harmonized and administered, are also of a kind "capable of repetition, yet evading review." That is because of the tight deadlines involved and the inherent non-binding nature of the referenda. For example, where, as here, a governing body has missed the 81-day submission deadline under N.J.S.A. 19:37-1 and instead waits until or before the 65-day deadline set forth in N.J.S.A. 19:37-2 to submit the proposed referendum to the county clerk, there is precious little time for concerned citizens to discover the problem, to mount a challenge in court, and to litigate the case to a successful conclusion before reaching the 50-day deadline for finalizing the ballots for the printers. See N.J.S.A. 19:14-1.

If the matter takes longer than that to litigate, the challengers will inevitably be told by the defendants that it is too late to grant them any relief. They are also apt to be told that their concerns do not matter because the referendum is non-binding in any case, such that the governing body does not have to pay attention to the citizens' vote on it.

Such a laissez-faire attitude must be rejected.  If it were to prevail, our courts would rarely have reason to hear cases involving non-binding referenda and the compliance of those propositions with the election laws.  To the contrary, there are several reported cases where our courts have ruled on legal issues implicated by non-binding referenda.  See, e.g., State v. Bergen Cnty. Bd. of Chosen Freeholders, 121 N.J. 255 (1990) (considering the propriety of a referendum question under N.J.S.A. 19:37-1 that sought voter approval to take legal action); Bd. of Chosen Freeholders v. Szaferman, 117 N.J. 94 (1989) (considering the merits of the appellants' case, which sought a declaratory judgment as to whether certain activities qualified as "government or internal affairs," as required under N.J.S.A. 19:37-1); Borough of Bogota v. Donovan, 388 N.J. Super. 248 (App. Div. 2006) (holding the particular referendum question under N.J.S.A. 19:37-1 to be improper).

As we show in Part II(B), infra, the provisions within N.J.S.A. 19:37-1 and -2 and the related provision within N.J.S.A. 19:37-1.1 have a murky interrelationship and lineage. Defendants and the Attorney General have acknowledged that the statutes on their face are confusing and difficult to harmonize. Hence, the judiciary can provide a useful function in attempting

to clarify for the future what the statutes mean, and how they relate to one another.

A suitable means for attaining such clarity is through a declaratory judgment. See N.J.S.A. 2A:16-50 to -62. The remedial purpose of the Declaratory Judgment Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." N.J.S.A. 2A:16-51. "The Act merely broadens the rationale of remedies long cognizable in equity, such as those 'to settle doubts about the construction of a will . . . ; or . . . to quiet title, or a bill of peace.'" N.J. Turnpike Auth. v. Parsons, 3 N.J. 235, 239-40 (1949) (quoting In re Van Syckle, 118 N.J.L. 578, 580 (E. & A. 1937)). To serve these ends, the Act provides that "[a]ll courts of record in this [S]tate shall . . . have power to declare rights, status and other legal relations," N.J.S.A. 2A:16-52, and particularly to determine "any question of construction or validity arising under . . . [a] statute," N.J.S.A. 2A:16-53.

To be sure, the remedy of a declaratory judgment is "circumscribed by the salutary qualification that the jurisdiction of the courts may not be invoked in the absence of an actual controversy." Parsons, supra, 3 N.J. at 240. Here, such an ongoing controversy persists, even though the voters

have voted and the Township officials have decided, at least for the time being, that they do not want to acquire the roadway. Despite their lack of success at the polls and in town hall, plaintiffs have not abandoned their cause. They expeditiously sought and obtained a ruling on the legal issues before the election, and they now want our plenary appellate review of that ruling to determine whether it was sound.

We believe that it is eminently in the interests of justice to complete that process of judicial review, having gained the benefit of the additional briefing and the thoughtful oral advocacy of the parties and counsel. We therefore decline to dismiss the appeal as moot.

### B.

As we have stated, the pivotal issue before us concerns the interplay between the 81-day submission deadline currently expressed in N.J.S.A. 19:37-1 and the 65-day deadline in N.J.S.A. 19:37-2. The issue, in essence, is whether the 81-day deadline can be ignored as long as the 65-day deadline is met. Although these statutes have been mentioned at times in reported cases, the precise question before us has yet to be resolved.

In undertaking the statutory analysis, several well-established principles guide us. "The Legislature's intent is the paramount goal when interpreting a statute and, generally,

the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)); Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 23 (2009) ("When interpreting a statute, our main objective is to further the Legislature's intent.").

Words contained within the statute should be given their plain meanings and "read in context with related provisions so as to give sense to the legislation as a whole." DiProspero, supra, 183 N.J. at 492; see also N.J.S.A. 1:1—1 (stating that a "statute is to be given its plain meaning, unless inconsistent with the manifest intent of the [L]egislature or unless another or different meaning is expressly indicated"); Soto v. Scaringelli, 189 N.J. 558, 569 (2007). In cases where varying interpretations of the plain language in the statute are plausible, the court should look to judicial interpretation, rules of construction, or extrinsic matters. Bubis v. Kassin, 184 N.J. 612, 626 (2005); see also Bergen Commercial Bank v. Sisler, 157 N.J. 188, 202 (1999).

Moreover, when reviewing two separate but related statutes, "the goal is to harmonize the statutes in light of their purposes," Am. Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 79-80 (2006), to give effect to the Legislature's

intent as evidenced by its "language[,] . . . the policy behind it, concepts of reasonableness and legislative history," <u>Johnson Mach. Co. v. Manville Sales Corp.</u>, 248 <u>N.J. Super.</u> 285, 303-04 (App. Div. 1991) (citing <u>Monmouth Cnty. v. Wissell</u>, 68 <u>N.J.</u> 35 (1975)).  Therefore, a reviewing court should assume that the Legislature did not use "any unnecessary or meaningless language," <u>Patel v. N.J. Motor Vehicle Comm'n</u>, 200 <u>N.J.</u> 413, 418-19 (2009), and should instead "try to give effect to every word of [a] statute . . . [rather than] construe [a] statute to render part of it superfluous," <u>Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety, Div. of Consumer Affairs</u>, 120 <u>N.J.</u> 18, 26-27 (1990) (citations omitted).  "We must presume that every word in a statute has meaning and is not mere surplusage, and therefore we must give those words effect and not render them a nullity."  <u>In re Attorney General's "Directive on Exit Polling: Media & Non-Partisan Public Interest Groups"</u>, 200 <u>N.J.</u> 283, 297-98 (2009).

Our courts previously considered aspects of <u>N.J.S.A.</u> 19:37-1 in <u>Camden County Board of Chosen Freeholders v. Camden County Clerk</u>, 193 <u>N.J. Super.</u> 100 (Law Div.), <u>aff'd</u>, 193 <u>N.J. Super.</u> 111 (App. Div. 1983).  In that case, the trial court declared untimely a non-binding referendum that the freeholders had submitted to the county clerk 48 days before a general election.

Id. at 108-09. At the time, the applicable provision in N.J.S.A. 19:37-1 had prescribed that the referendum must be filed with the county clerk within 60 days of the election. Ibid. Because of the untimeliness, the trial court declared the referendum invalid. Ibid. The court rejected the freeholders' argument that the deadline in N.J.S.A. 19:37-1 could be judicially relaxed, noting that the statute used the term "shall," which commonly signifies a mandatory construction. Id. at 109 (noting that a "permissive construction [of N.J.S.A. 19:37-1] would defeat the legislative mandate"). On further review, we summarily affirmed, expressly adopting the trial court's reasoning to declare the referendum invalid "because the 60-day filing requirement of N.J.S.A. 19:37-1 was not met." Camden Freeholders, supra, 193 N.J. Super. at 112.

Here, defendants suggest that the Camden Freeholders opinions are not of significance, as those cases did not address an argument that a timely submission under N.J.S.A. 19:37-2 cured any untimeliness under N.J.S.A. 19:37-1. As of the time that the Camden Freeholders cases were decided in 1983, the deadline in N.J.S.A. 19:37-2 (then 60 days) happened to be coextensive with the deadline in N.J.S.A. 19:37-1 (also then 60 days). Defense counsel argue that this means that the freeholders' resolution was improper, implicitly under N.J.S.A.

23

19:37-2 as well as under N.J.S.A. 19:37-1, because it failed to meet both submission deadlines.

When the statutes were amended in 1985 after the 1983 Camden Freeholders litigation, the Legislature increased the time frame in N.J.S.A. 19:37-1 from 60 days to 74 days, while the time frame in N.J.S.A. 19:37-2 remained at 60 days. Thereafter, when the statutes were most recently amended again in 2011, the time frame in N.J.S.A. 19:37-1 was increased from 74 days to 81 days, while the time frame in N.J.S.A. 19:37-2 was increased from 60 days to 65 days.

We further note that historically, even prior to 1983, the deadlines in the two provisions have sometimes been coextensive, and other times different. Indeed, when the statutes were apparently first enacted in 1920, the antecedent to N.J.S.A. 19:37-1 did not specify a deadline,[8] while the related antecedent to N.J.S.A. 19:37-2 specified a 30-day deadline.[9]

Our review of the legislative history has identified no explicit reasons for this uneven pattern of deadline changes.

---

[8] The Legislature amended N.J.S.A. 19:37-1 in 1942 to provide 40 days; in 1967 to provide 60 days; in 1985 to provide 74 days; and most recently in 2011 to provide 81 days.

[9] The Legislature amended N.J.S.A. 19:37-2 in 1947 (curiously, not 1942) to provide for 40 days; in 1971 (curiously, not 1967) to provide 60 days; and most recently in 2011 to provide for 65 days. There was no companion amendment to N.J.S.A. 19:37-2 in 1985, when the time frame in N.J.S.A. 19:37-1 was increased.

A-0908-13T2

Even so, we must ultimately consider the statutes as they are currently worded.

As we have already noted, "[i]t is a cardinal rule of statutory construction that full effect should be given, if possible, to every word of a statute. We cannot assume that the Legislature used meaningless language." Gabin v. Skyline Cabana Club, Inc., 54 N.J. 550, 555 (1969) (citations omitted); see also McGann v. Clerk of Jersey City, 167 N.J. 311, 321 (2001). If, as defendants essentially argue, a governing body can bypass the 81-day deadline in N.J.S.A. 19:37-1 by simply providing the county clerk with a certified resolution under N.J.S.A. 19:37-2 within that separate provision's 65-day deadline, the deadline in the former becomes superfluous. That cannot be so.

Although the underlying legislative intent has not been expressed in the clearest manner, the present wording of N.J.S.A. 19:37-1 and N.J.S.A. 19:37-2 most logically appears to provide for a two-step process: first, the governing body's "request" under subsection 1, either through the adoption of a resolution or an ordinance, to include a referendum on the ballot, followed by the submission under subsection 2 of a certified resolution containing the ballot question.

In between those two events, a citizen's petition under N.J.S.A. 19:37-1.1 may be presented. That provision in

subsection 1.1, which was originally enacted in 1967, currently reads as follows:

> Whenever a governing body of a municipality has adopted an ordinance or resolution pursuant to section 19:37-1 of the Revised Statutes, upon the presentation to the governing body of such municipality of a petition signed by 10% or more of the voters registered and qualified to vote at the last general election in such municipality, requesting the governing body of such municipality to ascertain the sentiment of the legal voters of the municipality upon any question or policy pertaining to the government or internal affairs thereof that is reasonably related to any proposition formulated and expressed in such ordinance or resolution, such governing body of the municipality shall thereupon adopt at its next regular meeting[10] following the presentation of such petition a resolution requesting the clerk of the county to print upon the official ballots to be used at the next ensuing general election a certain proposition as formulated and expressed in the petition. Such request <u>shall be filed with the clerk of the county not later than the 67th day previous to the election</u>.
>
> [(Emphasis added).]

Notably, the Legislative Statement that accompanied Assembly Bill No. 840, which later became <u>L.</u> 1967, <u>c.</u> 101 and the original version of <u>N.J.S.A.</u> 19:37-1.1, stated the following:

---

[10] We make no comment on whether the time frame in <u>N.J.S.A.</u> 19:37-1.1 can feasibly accommodate consideration at the governing body's "next regular meeting."

A-0908-13T2

> At present the election law makes no provision for nonbinding referendum at the request of citizens of a municipality. This bill will correct the omission by providing <u>a means by which citizens of a municipality may compel a governing body to submit to public referendum questions alternate or related to those proposed</u> for nonbinding referendum <u>by the governing body</u>. The bill also <u>affords adequate time for such citizen action following the adoption of such a resolution or ordinance by the municipality</u>.

[(Emphasis added).]

Since its enactment in 1967, <u>N.J.S.A.</u> 19:37-1.1 has consistently provided for a time interval of at least two weeks between the governing body's passage of an ordinance or referendum proposing a non-binding referendum under <u>N.J.S.A.</u> 19:37-1, and the deadline for ten percent of the local voters to present and obtain the governing body's approval of a petition advocating an alternative referendum text. During that interval, concerned members of the public, having been formally apprised by the resolution or ordinance that a referendum is looming, can undertake steps to gather signatures on a petition seeking a revised or competing approach. <u>N.J.S.A.</u> 19:37-1.1. Even without pursuing such a petition, voters made aware of the referendum proposal might choose to lobby their local

representatives to either withdraw or alter the proposal before it goes on the ballot.[11]

The 81-day deadline of N.J.S.A. 19:37-1 therefore serves an important notice function, whether it triggers a responsive petition under N.J.S.A. 19:37-1.1 or simply informal local dialogue before the referendum goes forward. See Borough of Eatontown v. Danskin, 121 N.J. Super. 68, 76 (Law Div. 1972) (discussing the interplay of N.J.S.A. 19:37-1 and N.J.S.A. 19:37-1.1 in further detail, and explaining the two-step process).[12] The Legislature's stated objective under N.J.S.A.

---

[11] Defendants argue that we should not consider the impact of N.J.S.A. 19:37-1.1 because plaintiffs in this case did not present a petition to the Township after they learned of the proposed referendum. Whether or not that occurred here is unimportant to our endeavor to construe the related statutes as a whole. It is also worth noting that the proposed referendum in this case was not issued until the 70th day before the election. By that point, eleven days of the minimum fourteen-day interval between the 81-day deadline of N.J.S.A. 19:37-1 and the 67-day deadline of N.J.S.A. 19:37-1.1 had already been used up. That left potential challengers only three scant remaining days to gather the necessary signatures, obtain the governing body's assent at its next regular meeting, and file the alternative resolution with the county clerk.

[12] In Danskin, the court upheld a county clerk's refusal to place on the ballot a non-binding resolution that had been issued too late by the municipality's governing body, after the then-applicable deadline in N.J.S.A. 19:37-1 had already expired. Danskin, supra, 121 N.J. Super. at 78. The proposed resolution had been generated after a petition supporting the ballot measure had been submitted by local voters under N.J.S.A. 19:37-1.1. Id. at 71-73. The court declined to allow the untimely item to be placed on the ballot, rejecting the municipality's
(continued)

19:37-1.1 to provide "adequate time for . . . citizen action following the adoption of . . . a resolution or ordinance by the municipality" proposing a non-binding referendum would be squelched if a town simply could skip the 81-day deadline and wait until the 65-day submission date provided for under N.J.S.A. 19:37-2.

In fact, under the current statutory timetable, the 67-day deadline for a citizens' petition under N.J.S.A. 19:37-1.1 clearly precedes the 65-day deadline for submission of a governing body's proposed referendum under N.J.S.A. 19:37-2. Although there appears to be no express legislative statement on this aspect, it stands to reason that the current two-day gap between the 67th and 65th days has been designed to allow for at least a brief period for the referendum language advocated in a citizens' petition to potentially displace the text of the proposed referendum initially crafted by the governing body. This also supports our interpretation that the deadlines within the present statutory scheme must all be scrupulously honored.

---

(continued)
claim of "substantial compliance." Id. at 74-77. Upon examining the legislative history of the provisions at issue, the court decided that the deadline expressed in N.J.S.A. 19:37-1 was mandatory, and had to be strictly enforced. Id. at 77-78. The same kind of strict enforcement is warranted in this case.

A-0908-13T2

We do not find the enforcement of the deadline in <u>N.J.S.A.</u> 19:37-1 would unduly "deprive voters of their franchise or . . . render an election void for technical reasons." <u>Kilmurray v. Gilfert</u>, 10 <u>N.J.</u> 435, 440 (1952). As our foregoing discussion of the interplay of <u>N.J.S.A.</u> 19:37-1 and <u>N.J.S.A.</u> 19:37-1.1 showed, adherence to the 81-day deadline actually protects the citizenry and promotes the opportunity for voters to respond effectively to a proposed referendum.

The Attorney General suggests that, if we deem it prudent to reach the merits, we should construe the deadline in <u>N.J.S.A.</u> 19:37-1 as regulating only municipalities, while the deadline in <u>N.J.S.A.</u> 19:37-2 regulates solely the county clerks. With all due respect, we fail to see how that suggestion solves the problem before us. No matter who is the relevant governmental "actor" within each provision, the critical question remains the same: is a referendum valid when it has not been submitted in compliance with the 81-day deadline in <u>N.J.S.A.</u> 19:37-1? We are satisfied that the most logical answer to that question is no. If, for some reason, the Legislature disagrees with our construction, it can revise the statutes, as it has many times in the past.

For these many reasons, we reverse the trial court's decision and declare that the referendum was untimely under

N.J.S.A. 19:37-1 and therefore invalid. Having made that declaration of invalidity, there is no reason for us to reach plaintiffs' separate claim of invalidity based upon the language of the interpretive statement.

C.

We perceive no reason to go beyond a declaration of invalidity as a remedy in this case. We decline to order a prospective injunction or any other extraordinary measure. The election is over, the governing body has made its decision about the road, and there is no purpose in doing more in this opinion than to clarify what the statutes mean and to apply them faithfully to the facts before us. There is no basis to award plaintiffs counsel fees under Title 19, or otherwise. Cf. N.J.S.A. 19:31-29(d) (permitting reasonable attorney fees and costs upon violations of specific provisions contained within the subsection, inapplicable here, related to voter registration); N.J.S.A. 19:44A-22.1 (permitting fees and costs in cases where the court determines that applications for injunctive relief in certain violations of campaign contribution laws, also inapplicable here, are frivolous).

There is also no need to penalize or excoriate defendants, as the record contains no competent proof that they missed or misapplied the 81-day deadline because of some illicit scheme to

31

evade the election laws. We recognize that, until this appeal was decided, the relationship between the statutory deadlines was unclear. The absence of clarifying precedent until today could easily have contributed to that uncertainty.

We are mindful that a declaratory ruling may be perceived by plaintiffs to be a Pyrrhic victory, as they may well have hoped for a more ambitious remedy. Even so, their legal position about the referendum's untimeliness has been vindicated, and that is no small achievement.

Whether the speed limit in front of this elementary school is ever further reduced is a topic well beyond the scope of this lawsuit. We leave any future discussion or action on that subject to the arena of local politics and public discourse, having discharged our limited but essential function of judicial review and statutory construction.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0908-13T2